## In re CROWN BOOKS CORPORATION, Debtor.

### No. 01–407(MFW).

United States Bankruptcy Court, D. Delaware.

Aug. 1, 2001.

Dominic Pacitti, Donald J. Detweiler, Saul Ewing LLP, Wilmington, DE, Joyce A. Kuhns, Saul Ewing LLP, Baltimore, MD, counsel for Crown Books Corporation.

Kathleen P. Makowski, Klett, Rooney, Lieber & Schorling, Wilmington, DE, David M. LeMay, Chadbourne & Park, LLP, New York City, counsel for the Official Committee of Unsecured Creditors.

Jeffrey C. Wisler, Henry E. Gallagher, Jr., Michelle McMahon, Connolly, Bove, Lodge & Hutz, Wilmington, DE, Jeff J. Friedman, Melissa A. Hager, Rosenman & Colin LLP, New York City, counsel for New Hampshire Dupont Building, L.P.

William F. Taylor, Jr., Elzufon, Austin, Reardon, Tarlov & Mondell, P.A., Wilmington, DE, Bradshaw Rost, Tenenbaum & Saas, P.C., Bethesda, MD, counsel for PADC Retail, Inc.

## MEMORANDUM OPINION[1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court are Motions by New Hampshire Dupont Building, L.P. ("NHDB") and PADC Retail, Inc. ("PADC") (collectively "the Landlords") for allowance and payment, as part of the cost to cure defaults under their leases, of attorneys' fees and costs incurred during the pendency of this case. Crown Books Corporation ("the Debtor") and the Official Committee of Unsecured Creditors ("the Committee") oppose the Motions. For the reasons stated below, we grant the Motions in part.

### I. FACTUAL BACKGROUND

On February 12, 2001, the Debtor filed a petition for relief under chapter 11 of the Bankruptcy Code. This was the second bankruptcy filing for the Debtor. At the initial hearing held in the case, the Debtor stated its intention to liquidate all its assets in an expeditious manner.

On February 15, 2001, the Debtor filed a motion for authority to enter into an agency agreement to conduct going out of business ("GOB") sales at its stores. A hearing on that motion was held on March 2, 2001. Objections were filed by numerous landlords, including NHDB, which raised significant issues regarding the conduct of the GOB sales. An order was ultimately entered granting the motion, in part.[2]

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

2. The Order was delayed, and ultimately revised, because the Debtor had received an

On March 5, 2001, the Debtor filed a Motion for authority to sell certain assets and to assume and assign certain leases (including the leases with the Landlords). The Motion included a list of what the Debtor asserted were the amounts necessary to cure any defaults under the various leases and sought approval of an auction procedure. The procedure was approved and an auction was conducted on March 15, 2001. Objections to the sale motion (and to the cure amounts asserted by the Debtor) were due by March 14, 2001. Both Landlords filed timely objections to the Motion and disputed the amounts the Debtor asserted were due to them: PADC asserted an additional $23,341.66 in pre-petition rent was due (largely because of pro-rated real estate taxes) and NHDB asserted an additional $841.63 in pre-petition rent was due. Both objections also asserted that the Debtor was in default for failure to pay rent post-petition (PADC claimed $20,373.19 was due, and NHDB claimed $14,085.73 was due). The Landlords also asserted that they were entitled to attorneys' fees as part of their cure claims.

At the hearing held on the sale motion on March 16, 2001, the Debtor acknowledged that it had made only a partial rental payment for the month of March and stated that it intended to pay the remainder of post-petition rent due to all Landlords. The sale and assumption and assignment of leases was approved on March 16, 2001, reserving the issue of whether attorneys' fees were allowable as part of the cure claim. The parties filed motions and responses addressing this specific issue and argument was heard on July 9, 2001.

## II. DISCUSSION

Section 365(b) allows a debtor to assume and assign a lease or other executory contract only if "at the time of assumption of such contract or lease, the [debtor] . . . compensates, or provides adequate assurance that the [debtor] will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default." 11 U.S.C. § 365(b)(1)(B).

■ The obligation to cure defaults includes the payment of any late or similar charges that are due under the contract or lease. To recover attorneys' fees as part of a cure claim, the Landlords must establish several facts.

### A. The Lease Allows Attorneys' Fees

■ First, courts have held that attorneys' fees are recoverable as part of a cure claim only if the contract or lease specifically requires their payment. "Although attorneys fees are not independently recoverable under the Bankruptcy Code, section 365(b)(1)(B) allows for such recovery if based upon the existence of a separate agreement between the parties." *In re Child World, Inc.*, 161 B.R. 349, 353 (Bankr.S.D.N.Y.1993). *See also In re Shangra–La, Inc.*, 167 F.3d 843, 849–50 (4th Cir.1999); *In re Best Products Co., Inc.*, 148 B.R. 413 (Bankr.S.D.N.Y.1992).

In this case, both leases provide for payment of attorneys' fees under certain circumstances. The PADC lease provides at Article 20.19 that:

In the event either party hereto brings or commences legal proceedings to enforce any of the terms of this Lease or to assert any rights thereunder, the successful party in such action shall be

---

offer to purchase 18 of the stores from Books–A–Million, Inc. The parties agreed to delete those stores from the GOB motion and con-

duct a second auction on the 18 stores. This was the subject of the March 5 sale motion.

entitled to receive and shall receive from the other party hereto, a reasonable sum as attorney's fees and costs, such sum to be fixed by the court in such action.

The NHDB lease similarly provides at Schedule C, Section 11(e):

In the event either party hereto brings or commences legal proceedings to enforce any of the terms of this Lease, the successful party in such action shall then be entitled to receive and shall receive from the other of said parties, in every such action commenced, a reasonable sum as attorney's fees and costs, to be fixed by the court in the same action.

■ The Debtor asserts that these provisions do not entitle the Landlords to attorneys' fees in this case because the Landlords did not bring or commence any action against the Debtor on which they prevailed. This argument is without merit. The Landlords did commence legal proceedings against the Debtor when they filed objections to the Debtor's Motion to conduct GOB sales and the Debtor's Motion to assume and assign the Leases. Those objections converted the Motions into contested matters under Rule 9014, which incorporates many of the Federal Rules of Civil Procedure. Contested matters in bankruptcy cases involve presentation of legal positions through pleadings, oral argument and testimony. We conclude that a contested matter is, therefore, a "legal proceeding" within the terms of the Leases.

Further, the objections sought to enforce the provisions of the Leases by 1) opposing the GOB sales to the extent the procedures contravened the terms of the Leases; and 2) seeking a determination (and payment) of the amount necessary to cure the existing defaults under the Leases. Thus, the Landlords' objections were legal proceedings commenced to enforce the terms of the Leases.

However, to be entitled to attorneys' fees under the Leases, the Landlords must have prevailed. In this case, NHDB was not successful in its objection to the GOB motion. NHDB's limited objection to that motion sought an order (1) requiring payment of pre-petition defaults and post-petition rent until the Debtor rejected the Lease, (2) setting a fixed date by which the Lease would be rejected by the Debtor, (3) requiring the Debtor to abandon any property left on the premises after rejection, and (4) allowing NHDB an administrative claim for the costs of removing the abandoned property and cleaning the premises. None of the relief sought by NHDB was granted. Therefore, attorneys' fees for those efforts are not allowable under the Lease terms.

In contrast, the Landlords were successful in the prosecution of their objections to the Debtor's Motion to assume and assign the Leases. Although they did not oppose the assumption and assignment of their Leases, they were successful in getting an Order directing the full payment of the defaults under those Leases. Although the Debtor argues that NHDB increased its recovery by less than $1,000, the amount of recovery is not relevant to the issue of whether attorneys' fees are allowable, but only to whether the fees are reasonable.

Similarly, the Debtor argues that the dispute over the cure amount due to PADC arose only because the Debtor did not have the information relating to the amount of the real estate taxes that were due (since the assumption and assignment occurred in the middle of the year and the taxes are assessed annually). Again, that is not relevant to whether attorneys' fees are allowable. PADC was required to file an objection to the Debtor's Motion in

order to assure it received the full amount it was due under the Lease.

Further, both Landlords succeeded in pressing their objections that post-petition rent had not been paid. It was only after the Landlords had filed their objections that the Debtor conceded it had only paid part of the rent due post-petition. The Debtor only agreed to pay the full post-petition rent at the hearing on its sale motion. Thus, in this instance, both Landlords were successful in prosecuting their objections to the Debtor's Motion and their fee requests for those efforts are allowable under the Lease provisions.

### B. *State Law versus Bankruptcy Law Issues*

The Debtor also asserts that the attorneys' fees requested must be allowable under state law. Where the matter involves purely bankruptcy law issues, the Debtor argues, attorneys' fees are not recoverable. *See, e.g., In re Fobian*, 951 F.2d 1149, 1153 (9th Cir.1991) (applying bright line test: if issues raised are peculiar to bankruptcy law, such as objection to confirmation of chapter 12 plan, they are not recoverable); *In re Ryan's Subs, Inc.*, 165 B.R. 465, 469 (Bankr.W.D.Mo.1994) (fees for litigating bankruptcy issues not allowed); *In re Joshua Slocum, Ltd.*, 103 B.R. 601, 608 (Bankr.E.D.Pa.1989) (attorneys' fees for litigating cure claim not allowed). In this case, the Debtor asserts that the fees requested were for issues peculiar to bankruptcy law and not for collection efforts.

The Landlords argue that the bright line test articulated by the Ninth Circuit should not be adopted. They note that in *Shangra–La*, the Fourth Circuit expressly rejected the Ninth Circuit's test observing that "the state law/bankruptcy law dichotomy relied upon by the bankruptcy court cannot serve to solve the puzzle of a landlord's right to post-petition attorneys' fees

under § 365(b)(1)(B) of the Bankruptcy Code." 167 F.3d at 848. Instead, the Fourth Circuit held that "[a]ttorneys' fees incurred in attempting to collect sums due from debtors following default may be recovered as pecuniary loss under § 365(b)(1)(B) if such monies were expended as the result of a default under the contract or lease between the parties and are recoverable under the contract and applicable state law." *Id.* at 849.

We agree with the analysis of the Fourth Circuit: this is not a simple question of whether the issues litigated involve state or federal rights. Bankruptcy law frequently incorporates state law rights. *See, e.g., Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000) ("the 'basic federal rule' in bankruptcy is that state law governs the substance of claims"); *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 557 n. 10, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (Souter, J., dissenting) ("creditors' substantive state law rights 'survive' in bankruptcy, while their 'procedural' or 'remedial' rights under state debtor-creditor law give way"); *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Congress has generally left the determination of property rights in the assets of a debtor's bankruptcy estate to state law"). In particular, section 365 allows claims of landlords which are founded on state law.

■ We conclude, as the Fourth Circuit did, that the correct analysis is whether the actions undertaken by the Landlords were to enforce their rights under the Leases in a manner consistent with section 365 (which would be compensable) or whether they sought to contest the Debtor's rights under the Bankruptcy Code (which are not compensable). A detailed look at the cases in this area elucidates this comparison.

In *Child World*, the debtor conceded and the Court allowed attorneys' fees for a

landlord's efforts to enforce "the timely payment of rental, tax, and common area maintenance charges under the lease" for the post-petition period. 161 B.R. at 354. The Court, however, disallowed attorneys' fees for the landlord's efforts to collect damages based on an *ipso facto* clause which is not enforceable in bankruptcy cases. *Id.* at 354–55. Rather than rely on the dichotomy between state and federal rights, the Court allowed attorneys' fees for efforts to enforce the terms of the lease, so long as those efforts were not inconsistent with the debtor's rights under the Bankruptcy Code.

Similarly, in *Best Products*, the Court denied the landlord's request for attorneys' fees incurred in seeking to shorten the time within which the debtor must assume or reject the lease and then opposing the debtor's assumption of the lease. 148 B.R. at 414. The Court concluded that the fees were not recoverable because they were not incurred in efforts to collect any delinquencies under the lease but in seeking to deny the debtor rights it had under the Bankruptcy Code. *Id.* at 415.

In *Ryan's Subs*, the landlord contested the debtor's right to assume the lease and franchise agreement and sought relief from the stay to evict the debtor. 165 B.R. at 467. The Court concluded that "If [the landlord] chooses to challenge [the] rights granted to the debtor by the Code, then [the landlord] must bear the risk of attorney's fees incurred by such action." *Id.* Accordingly, the landlord's motion for attorneys' fees and expenses under the lease was denied. *Id.*[3]

Similarly, *Fobian*, which originated the bright line test, did not involve a landlord's

effort to enforce the terms of its lease within the confines of the Bankruptcy Code but an effort to deny the debtor the rights afforded it by the Bankruptcy Code (by objecting to confirmation of its chapter 12 plan). 951 F.2d at 1153.

■ In the instant case, the Landlords' objections to the Debtor's cure claims did not seek to deprive the Debtor of any fundamental right under the Bankruptcy Code. Rather, the Landlords were seeking to collect sums due them under their Leases. Such rights are not contrary to the Code, but are expressly preserved by the Code. The pre-petition cure amounts are required to be paid by section 365(b)(1) of the Bankruptcy Code and the post-petition rent is required to be paid under section 365(d)(3). Thus, we conclude that those actions are compensable under both the terms of the Leases and the Bankruptcy Code.

C. *Reasonableness of the Fees*

■ Attorneys' fees are recoverable under section 365(b)(1) only if they are reasonable. *See, e.g., In re Westworld Community Healthcare, Inc.*, 95 B.R. 730, 733–34 (Bankr.C.D.Cal.1989); *In re BAB Enterprises, Inc.*, 100 B.R. 982, 983–84 (Bankr.W.D.Tenn.1989).

1. *NHDB's request*

NHDB requests reimbursement of $27,240 in attorneys' fees and $517.65 in costs incurred through the date of the hearing on the sale motion and resolution of the amount of rent due. The Debtor asserts this is clearly not reasonable, since the amount of the pre-petition cure in dispute was only $841.63. However, as noted

---

**3.** The Landlords argue that the *Joshua Slocum* case, also cited by the Debtor, is simply distinguishable. In that case, the Court denied attorneys' fees because no evidence was presented that the lease permitted an award of attorneys' fees or any details about the services rendered. 103 B.R. at 608. In contrast, in this case, the Leases (which include provisions allowing attorneys' fees) and detailed bills (evidencing the services rendered) were introduced into evidence by both NHDB and PADC.

above, NHDB also had to raise in its objection, the Debtor's failure to pay post-petition rent (in the amount of $14,085.73).

Of the fees requested, however, $12,659 were incurred in connection with NHDB's losing objection to the GOB motion. Those are not compensable under the terms of the Lease. The remainder ($13,-651 in fees and the expenses of $517.65) represent fees and costs rendered in connection with the objection to the sale motion. If we were to allow this request in full, it would exceed the amount of the disputed claim.

■ We conclude that to determine the reasonableness of an award of attorneys' fees to a landlord we must consider several factors, including: (1) the amount of the dispute relative to the attorneys' fee requested, (2) the Debtor's good faith effort to estimate and resolve the cure claim, (3) the Debtor's compliance with the Code, and (4) whether the issue is a matter of first impression.

■ In the case of NHDB, the disputed amount of the pre-petition rent cure claim was small and there is no evidence that the Debtor failed to act in good faith in estimating that amount. It is significant that the Debtor failed to comply with its obligation to pay post-petition rent on a timely basis.

The Debtor argues that it was in arrears post-petition only because the sale of all its assets was due to close in mid-March and its management erroneously believed that it only needed to pay partial rent for March. It asserts that, as soon as counsel for the Debtor became aware of the issue, post-petition rent was paid in full.

We do not accept the Debtor's argument as a defense to the request for attorneys' fees. The Debtor's "mistake" was its own

doing and the Debtor's counsel only became aware of its client's failure to comply with the Code requirements as a result of the objections filed by the Landlords. Those objections were, therefore, necessary for the collection of the post-petition rent due.

The issue of whether attorneys' fees are allowable was a matter of first impression.[4] Therefore, attorneys' fees are warranted for the Landlords' efforts.

In these circumstances, we conclude that attorneys' fees of $3,550 plus expenses of $517.65 are reasonable. This represents full compensation for attendance at the hearing on the sale motion, plus all out of pocket expenses and is slightly more than 25% of the amount of the disputed cure claim (both pre-petition and post-petition rent due).

### 2. PADC's request

■ PADC has submitted a request for attorneys' fees in the amount of $13,301.72 for services rendered through July 9, 2001. The Debtor asserts that, even if PADC is entitled to attorneys' fees, this amount is clearly unreasonable.

The Debtor acknowledges that the disputed claim was over $45,000. The amount of the disputed pre-petition cure figure alone was over $23,000. However, the Debtor asserts that this was due in large part to the unallocated real estate taxes (in excess of $18,000) of which the Debtor was unaware at the time it filed its notice of cure claims.

We do not accept the Debtor's explanation. The Debtor knew that it was responsible for real estate taxes under the terms of the Lease. Although it may not have known the exact amount, it could have estimated the claim. Instead, the Debtor

---

**4.** Although Judge Walsh disallowed attorneys' fees as part of a landlord's cure claim in *In re USN Communications, Inc.,* C.A. 99–383, Op. at p. 6, n. 2 (Bankr.D.Del. July 30, 1999), that was done in reliance on *Fobian* and without any discussion.

included nothing for real estate taxes in its cure schedule for PADC. This evidences a lack of good faith. PADC was required to file an objection to the cure amount and to present proof of that amount in order to protect its interests. Doing so was not only reasonable, but necessary, to collect amounts that the Debtor owed it.

Further, at the time of the objection, the Debtor was not in compliance with its obligation to pay pre-petition rent. At the time of the hearing, the Debtor was in arrears in payment of post-petition rent due to PADC in the amount of $14,698.32.

Finally, this was a matter of first impression. PADC's counsel briefed the issue and presented evidence and argument at the hearing held on this issue. Some compensation for attorneys' fees and expenses is warranted.

Nonetheless, we do not conclude that all the fees requested by PADC are reasonable. PADC has requested $13,219 in fees and $82.72 in expenses. Of that amount, $672 in fees in February, 2001, were for general services by the attorney for PADC advising its client of the effect of the bankruptcy filing on its rights. These services cannot be characterized as necessary for the collection of rents and would not be allowable under the Lease terms. The remaining $7,939 in fees and $78.24 in expenses were incurred in services rendered in March and April in connection with the Debtor's assumption and assignment of the leases and the collection of the amount due PADC under the Lease. These fees and expenses are reasonable considering the amount of the disputed claim (in excess of $45,000) and the efforts needed to obtain relief. We note that counsel was unable to obtain the Debtor's agreement to the cure amount and was required to attend the hearing to assure payment to its client.

PADC also seeks $4,608 in fees and $4.48 in expenses for services rendered after the hearing which, in large part, was an effort to obtain recovery of its attorneys' fees. While we are normally reluctant to award fees for seeking payment of attorneys' fees, we will award half of the fees (and all the expenses) because this was a matter of first impression for the Court.

We find, therefore, that attorneys' fees and expenses incurred by PADC in the amount of $10,325.72 are reasonable and recoverable as part of its cure claim under section 365(b)(1)(B).

## III. CONCLUSION

For the foregoing reasons, we grant, in part, the requests of PADC and NHDB for allowance and payment of attorneys' fees and expenses (in the amount of $10,325.72 and $4,067.65, respectively) as part of their cure claims.