**In re MUMA SERVICES INC. (f/k/a Murphy Marine Services, Inc.), et al., Debtors.**

**Nos. 01–926(MFW) through 01–950(MFW).**

United States Bankruptcy Court, D. Delaware.

June 14, 2002.

now be asserted against reorganized LGII,

not the former bankruptcy estate.

Laura Davis Jones, Christopher J. Lhulier, Pachulski Stang Ziehl Young & Jones, Wilmington, DE, Richard L. Epling, Pillsbury Winthrop LLP, New York City, for Debtors.

Charlene D. Davis, Christopher A. Ward, The Bayard Firm, Wilmington, DE, Michael G. Neri, Schnader Harrison Segal & Lewis LLP, Philadelphia, PA, for Transamerica Leasing, Inc.

Teresa D. Currier, Eric Lopez Schnabel, Klett Rooney Lieber & Schorling, Wilmington, DE, Michael B. Fisco, Anne F. Larsen, Faegre & Benson LLP, Minneapolis, MN, for Official Committee of Unsecured Creditors.

### OPINION[1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the Motion of Transamerica Leasing, Inc. ("Transamerica") for Immediate Payment of Administrative Expenses relating to rejected equipment leases and a Motion to Vacate the Order approving the rejection by NPR, Inc. ("NPR") of its equipment leases with Transamerica. In connection with those Motions, NPR filed a Motion for Leave to File Memorandum of Law and Affidavit under Seal. After two hearings and consideration of the affidavits and exhibits proffered, we deny the Motion to File under Seal, grant the Motion to Vacate and grant in part and deny in part the Motion for Immediate Payment of Administrative Expenses.

## I. FACTUAL BACKGROUND

On March 21, 2001, MUMA Services Inc., f/k/a Murphy Marine Services, Inc., and several of its affiliates, including NPR (collectively "the Debtors") filed voluntary petitions under chapter 11 of the Bankruptcy Code ("the Petition Date"). The Debtors provide integrated cargo transportation and logistics management services in the marine industry. These services are performed in New Jersey, Pennsylvania, Delaware, Florida and Puerto Rico.

Prior to the Petition Date, Transamerica and NPR entered into a Master Lease Agreement dated June, 1, 1989, as amended, together with a Lease Addendum No. 1 dated August 1, 1998, a Lease Addendum No. 2 dated August 1, 1998, and a Lease Addendum dated October 1, 1998 (collectively, "the Transamerica Leases"). Pursuant to the Transamerica Leases, NPR leased 2,219 containers ("the Containers").

After the Petition Date, as part of its efforts to reorganize, NPR decided to re-

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

duce the number of leased containers, reduce the overall cost of leasing, and obtain newer containers to lease. (Dec. 4, 2001, N.T. at p. 56.) In April 2001, NPR solicited proposals for new leases from leasing companies, including Transamerica. (*Id.* at 56–57.)

On or about May 4, 2001, Transamerica submitted a proposal to NPR which would have required: (i) the assumption of all existing Transamerica Leases; (ii) the immediate payment of $456,848.14 of prepetition debt and post-petition invoices billed; (iii) the establishment by NPR of a letter of credit in favor of Transamerica in the amount of $600,000; and (iv) the implementation of cross-default guarantees in favor of Transamerica by certain other Debtor affiliates and related entities. (Exhibit D–4.)

NPR also received a bid from Container Applications International, Inc. ("CAI") for the lease of 1,600 containers of various types. The CAI bid provided for rental charges between $1.40 and $1.50 per diem per container, for a lease term of five years. (Cervone Affidavit at ¶ 8.) Moreover, the CAI bid offered to waive all rent payments for the first eighteen months of the lease, thereby lowering the effective per diem rate to $.98 per container. (*Id.;* Dec. 4, 2001, N.T. at pp. 123–25.)

On May 15, 2001, NPR filed a Motion for authority to Reject the Transamerica Leases ("the Rejection Motion"). In the Rejection Motion NPR stated that:

> The Containers covered by the [Transamerica Leases] are excess equipment that will not be replaced. Based on the current financial condition and operations of NPR, the cost of keeping and maintaining the [Leases] is not warranted. Therefore, NPR has determined

that it does not need the [Containers] in its current or future operations.

(Rejection Motion at p. 5.) At the hearing held on May 30, 2001, NPR's counsel advised the Court that:

> The debtors' business judgment is that [the Containers] are not necessary to the conduct of the debtors' business, that the container market, unlike the chassis market, is relatively flush with other material and that we are right-sizing our container fleet.

(May 30, 2001, N.T. at p. 32.)

At the hearing Transamerica raised the issue of the return of the Containers to Transamerica. NPR's counsel stated that "[NPR is] going to start complying with the rejection immediately." (May 30, 2001, N.T. at p. 47.) As a result of these representations, we approved the rejection of the Transamerica Leases effective as of May 15, 2001 ("the Rejection Date").

Notwithstanding the rejection of the Transamerica Leases, NPR continued to use the Containers to conduct its business. (Dec. 4, 2001, N.T. at pp. 97–98, 110–11, 114.) NPR later stated that it needed the Containers to operate its business to avoid "a very big hardship on [NPR's] operation." (*Id.* at 114.) NPR later stated that it began to return the Containers to Transamerica in mid to late June, 2001, and completed the return of the Containers approximately five and a half months later. (*Id.* at 118.)[2]

On September 13, 2001, Transamerica filed a Motion for Immediate Payment of Administrative Expenses ("the Administrative Expense Motion") seeking payment for NPR's continued use of the Containers. On October 29, 2001, NPR and the Official Committee of Unsecured Creditors objected to the Administrative Expense Motion.

---

**2.** On June 22, 2001, after the Transamerica Leases had been rejected, NPR entered into a lease for containers with CAI, under the terms submitted in their proposal. (*Id.* at 135.)

In the Administrative Expense Motion, Transamerica sought immediate payment of the following charges:

1. $500,906.88 (per diem rentals)
2. $444,335.70 (flex rental charges)
3. $84,279.00 (handling charges)
4. $77,300.00 (drop-off charges)
5. $15,446.88 (repair service fees)
6. $430,615.33 (repair cost estimates)
7. $28,130.00 (lost containers)
8. late charges (Master Lease ¶ 2)
9. taxes (*Id.*)
10. interest on Transamerica's outstanding claims.

(Administrative Expense Motion, p. 44.)

On November 15, 2001, Transamerica filed a Motion to Vacate the Court's Order Approving NPR's Rejection of its Equipment Leases with Transamerica ("the Motion to Vacate"). On November 19, 2001, NPR objected to the Motion to Vacate and filed a Motion for Leave to File Memorandum of Law and Affidavit in Support Thereof under Seal ("Motion to File under Seal"). On November 20, 2001, Transamerica objected to the Motion to File under Seal. Hearings on the Motions were held on November 20, 2001, and December 4, 2001, and post-trial briefs were filed thereafter.

## II. *JURISDICTION*

This Court has core jurisdiction under 28 U.S.C. § 157(b)(2)(B), and (O).

## III. *DISCUSSION*

### A. *Motion to File under Seal*

NPR requested authority to file its pleadings in connection with these related Motions under seal in order to protect CAI's interests.

Section 107 of the Bankruptcy Code provides that:

(a) Except as provided in subsection (b) of this section, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.

(b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—

(1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or

(2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

11 U.S.C. § 107.

Section 107(a) creates a presumption in favor of public access to court records filed in bankruptcy cases. *See, e.g., In re Epic Associates V*, 54 B.R. 445, 447 (Bankr.E.D.Va.1985). Section 107(b) provides a narrow statutory exception to public accessibility in bankruptcy cases. *See, e.g., Video Software Dealers Ass'n. v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d Cir.1994); *Epic Associates*, 54 B.R. at 448 ("It is a highly unusual and extraordinary remedy for the Court to seal the records in any case"). The exception was intended to avoid "affording an unfair advantage to competitors by providing them information as to the commercial operations of the debtor." *In re Itel Corp.*, 17 B.R. 942, 944 (9th Cir. BAP 1982). "The provision was not intended to save the debtor or its creditors from embarrassment, or to protect their privacy in light of countervailing statutory, constitutional and policy concerns." *In re Foundation for New Era Philanthropy*, 1995 WL 478841, *4 (Bankr. E.D.Pa. May 18, 1995); *see also In re MorAmerica Financial Corp.*, 158 B.R.

135, 137 (Bankr.N.D.Iowa 1993); *In re Analytical Systems, Inc.,* 83 B.R. 833, 836 (Bankr.N.D.Ga.1987).

■ NPR asserts that CAI's standard business practice is not to make public the terms of negotiated agreements. In accordance with that practice, NPR stated that it agreed with CAI to keep the terms of the lease confidential. Transamerica asserts that although NPR promised to keep the information confidential, the leases with CAI contain no confidentiality provisions. (Exh. T–18.)

We conclude that there is no basis to keep the information confidential in the absence of a written confidentiality provision. Even if there were such a provision, however, it would not be determinative. If we were to permit NPR to file documents under seal simply because it unilaterally agreed to keep matters confidential, then the Court would never have control over motion practice in this case and section 107 would be meaningless.

NPR asserts, however, that if the terms of the lease with CAI were to become public, the disclosure may affect its relationship with CAI and other lessors. However, NPR has not provided any evidence that filing under seal outweighs the presumption of public access to court records. In the absence of any such evidence, we cannot conclude that disclosure of the terms of the lease would cause harm. *See, e.g., In re Continental Airlines,* 150 B.R. 334, 340 (D.Del.1993)(not proper to seal documents based on nothing more than the mere possibility that they contain defamatory assertions); *Itel Corp.,* 17 B.R. at 944 (information not properly sealed under section 107(b) when it merely was "conceivable" and was "not likely" that it would fall in the category of protected confidential commercial information). We are conscious of the desire of entities to keep information protected but that desire does not by itself justify the extraordinary remedy to file under seal in this instance.

### B. *Motion to Vacate Rejection Motion*

■ Transamerica asserts in its Motion to Vacate that we should vacate our order pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure, which incorporates Rule 60(b) of the Federal Rules of Civil Procedure. Rule 60(b) states, *inter alia:*

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ... (6) any other reason justifying relief from the operation of the judgment.

Fed.R.Civ.P. 60(b). To prevail under Rule 60(b)(3), the movant must establish that the adverse party engaged in fraud or other misconduct and that this conduct prevented the moving party from fully and fairly presenting its case. *See, e.g., Stridiron v. Stridiron,* 698 F.2d 204, 207 (3d Cir.1983); *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1341 (5th Cir.1978).

Transamerica asserts that NPR misrepresented its lack of need for the Containers in its Rejection Motion. Transamerica asserts that NPR represented that the Containers were not currently used, would not be used in the future, and would not be replaced. However, in fact, NPR did use the Containers for six months after the Rejection Motion was approved. Furthermore, prior to filing its Rejection Motion, NPR was engaged in negotiations to replace those Containers. Even though NPR knew it needed the Containers until it could get the new Containers from CAI, NPR asserted in its Rejection Motion that

the Containers were not being used and were not necessary.

Transamerica further asserts that NPR made these misrepresentations to avoid the requirements of section 365(d)(10), which provides that:

> The trustee shall timely perform all of the obligations of the debtor ... first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property ... until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title.

11 U.S.C. § 365(d)(10). The Rejection Date was fifty-six days after the Petition Date. Without the Rejection Order, NPR would have been required to pay Transamerica rent for the Containers on a current basis for the six months it continued to use them.

We conclude that NPR did engage in affirmative misrepresentations to this Court which prevented Transamerica from obtaining the relief to which it was entitled under the Bankruptcy Code. NPR now admits that the Containers were necessary for its operations and return of them to Transamerica on the Rejection Date would have caused it immediate harm by disrupting operations. By its misrepresentations, NPR has had the use of the Containers, without timely performing its obligations under section 365(d)(10) and the Transamerica Leases.

█ NPR asserts that due to an internal miscommunication, NPR's counsel was not aware at the time of the hearing on the Rejection Motion that NPR intended to enter into a new lease with CAI. However, Rule 60(b)(3) applies to both intentional and unintentional misrepresentations. *See, e.g., Lonsdorf v. Seefeldt,* 47 F.3d 893, 897 (7th Cir.1995); *Plattner v. Strick Corp.,* 102 F.R.D. 612, 614 (N.D.Ill.1984); 12 *Moore's Federal Practice* ¶ 60.43[1][a] (Matthew Bender 3d ed.2001). Thus, we need not decide whether the misrepresentations were intentional.

Because of NPR's misrepresentations, we conclude that it is necessary to vacate our Order approving the rejection of the Transamerica Leases. Based on the equities of the case, we conclude that the Transamerica Leases will be deemed rejected on the date that each container was actually returned to Transamerica and NPR is directed to immediately pay the obligations due under the Transamerica Leases for each container to the date that container was returned.[3]

### C. Obligations due under Section 365(d)(10)

There is, however, a dispute over what is due under the Transamerica Leases that NPR is obligated to pay under section 365(d)(10). Transamerica asserts that section 365(d)(10) requires payment of all the following charges: per diem rental, flex rental charges, handling charges, drop-off charges, repair service fees, repair cost estimates, lost containers, late charges, taxes, and attorney's fees. NPR asserts that only the per diem rental obligations must be paid and that the remainder of the obligations are rejection damages only entitled to general unsecured claim status pursuant to section 502(g).[4]

> A claim arising from the rejection ... of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined ... the same as if such claim had arisen before the date of the filing of the petition.

---

3. For example, if one of the Containers was returned on July 20, 2001, then NPR is directed to pay the per diem rent on that container from the sixtieth day after the Petition date through July 20, 2001.

4. Section 502(g) provides that:

In support of its position, Transamerica relies on the recent *Montgomery Ward* decision. *See In re Montgomery Ward Holding Corp.*, 268 F.3d 205 (3d Cir.2001). In *Montgomery Ward*, the debtor had a commercial real estate lease which required it to pay its landlord real estate taxes in addition to base rent. *Id.* at 207. Four days after the bankruptcy filing, the landlord presented an annual tax bill to the debtor and demanded full payment even though the majority of the taxes had accrued pre-petition. *Id.* The debtor tendered only a prorated amount equal to its post-petition occupancy. *Id.*

■ The Third Circuit in reversing the Bankruptcy Court and District Court required the debtor to pay the full year's taxes, regardless of when such taxes accrued. The Court held that the Congressional intent behind section 365(d)(3) required a debtor to perform all leasehold obligations as they came due. The Court concluded that such an "obligation is something that one is required to perform under the terms of the lease and that such an obligation arises when one becomes legally obligated to perform." *Id.* at 209. Given the similarities between section 365(d)(3) and section 365(d)(10), we conclude that the Third Circuit would construe section 365(d)(10) in the same manner. Therefore, to the extent that obligations arise after the sixtieth day of this case and prior to rejection of the Transamerica Leases, section 365(d)(10) requires that they be paid timely.

    1.  *Flex Rental, Handling & Drop-off Charges, Repair Service Fees, Repair Cost Estimate and Lost Containers*

■ The flex rental charges sought by Transamerica arise from the addenda to the Master Lease which provide for an early return option. If the Containers are returned to Transamerica before the Transamerica Leases expire, then the per diem rate per unit is increased retroactively to the beginning of the term of the Transamerica Leases. (*See* Lease Addendum No. 1(C)(1)-(2); Lease Addendum No. 2(C)(1), (D)(1); Lease Addendum (C)(1), (D)(1).) These are not, therefore, current charges for use of the Containers but are, rather, a payment due only for early return of the Containers which in this case is due to NPR's rejection of the Transamerica Leases. Thus, the flex rental charges arise only after the Containers are returned to Transamerica. They are not obligations which arise on a current basis under the Transamerica Leases. Instead, they arise only as a result of NPR's rejection of these leases and are, therefore, rejection damages.

The handling and depot charges are provided for in the Master Lease, which provides that:

> [NPR] *shall pay to Transamerica any lift-on and lift-off, loading and other charges incurred in connection with the receipt and return of [the Containers]* . . .

(Master Lease at ¶ 3 (emphasis added).) Thus, the depot and handling charges also arise only after the Containers are returned to Transamerica. They are, therefore, rejection damages and are not obligations arising on a current basis under the leases.

Transamerica also seeks payment for charges relating to the repair service fees and repair cost estimates. The Master Lease provides that:

> If [the Containers are] damaged, the Transamerica depot shall notify [NPR] or its authorized agent. . . . If [NPR]

11 U.S.C. § 502(g).

fails to give authorization to make the repairs ... within 10 days of notification of damage to [NPR], then Transamerica will have the repairs made for the account of [NPR]. All repairs will be made at the cost and expense of [NPR].

(Master Lease at ¶ 9.) Like the other charges and fees above, the charges for repairs arise only after the Containers are returned to Transamerica. Therefore, they are not entitled to administrative claim status.

▆ Transamerica also seeks payment for lost containers under the Master Lease which provides that:

If [the Containers], while rented to [NPR, are] damaged beyond repair, lost, stolen or destroyed, [NPR's] obligation to pay rental therefor shall terminate as of the date Transamerica receives payment of the replacement value thereof as determined by Transamerica.

(Master Lease at ¶ 7.) No evidence was presented whether the containers were lost before or after the Petition Date. Under the Transamerica Leases, Transamerica is entitled to the replacement value in lieu of current rent—but it is at the discretion of NPR. That is, NPR may elect to continue to pay rent on the lost unit or may elect to pay the replacement value of the unit which would stop the rent obligation. Consequently, with respect to lost units, we will order that NPR, may at its option pay the replacement value of those units or pay current rent on those units until the last date that all other units were returned to Transamerica which will be deemed to be the Rejection Date for the lost units. Any rent accruing after that date (or the replacement value as of that date) would be a rejection damage.

### 2. *Late Charges and Taxes*

▆ Transamerica also seeks payment under section 365(d)(10) of late charges

and taxes. In this regard, the Master Lease provides that:

Transamerica will bill [NPR] monthly, and [NPR] shall pay Transamerica invoices ... within 30 days from date of invoice. Payments overdue will be subject to a service charge equal to the lesser of 1.1% per month or the highest rate allowed by law. In addition to the payment of rentals, [NPR] shall pay or reimburse Transamerica for any and all sales and use taxes, personal property taxes, or other direct taxes levied against or based upon the use, storage operation or possession by [NPR] of the [Containers] leased ...

(Master Lease at ¶ 2.)

Late charges for failure to pay rent are current charges under the Lease. Therefore, we conclude that Transamerica is entitled to payment of those charges under section 365(d)(10) from the sixtieth day of this case until the rejection of the Transamerica Leases. With respect to taxes, we conclude that, to the extent Transamerica billed NPR for these items during that same period, they are also entitled to administrative claim status under the *Montgomery Ward* decision.

Transamerica has not presented any evidence of the amount of these charges. We will allow it to amend its request to quantify those charges in light of our ruling above as to the amount of administrative rent that NPR should have paid currently pursuant to section 365(d)(10).

### 3. *Attorney's Fees*

Lastly, Transamerica seeks payment of its attorney's fees. The Master Lease provides that:

[If NPR] shall fail to pay any sum or sums to be paid hereunder when the same becomes due; or [NPR] fails to observe or perform any other term or condition of this Lease in the manner

and at the time or times required herein, and any such failure remains unremitted for thirty days after written notice thereof to [NPR] by Transamerica, [then NPR] shall pay to Transamerica any reasonable attorney's fees and expenses Transamerica incurred in enforcing its rights hereunder.

(Master Lease at ¶ 17.)

Much like late charges and taxes, to the extent that reasonable attorney's fees are due from the sixtieth day of this case to the rejection of the Transamerica Leases, they will be entitled to a section 365(d)(10) administrative claim. However, Transamerica may only recover those attorney's fees undertaken to enforce their rights under the Transamerica Leases in a manner consistent with section 365. *See e.g., In re Shangra–La, Inc.,* 167 F.3d 843, 849 (4th Cir.1999); *In re Crown Books Corp.,* 269 B.R. 12, 17 (Bankr.D.Del.2001). Transamerica will not be reimbursed for the attorney's fees undertaken to contest NPR's rights under the Bankruptcy Code. *Shangra–La,* 167 F.3d at 849; *Crown Books,* 269 B.R. at 17.

As noted above, we have concluded that NPR made material misrepresentations to this Court warranting vacation of our Rejection Order and allowance of a claim in favor of Transamerica under section 365(d)(10). Therefore, we conclude that Transamerica's efforts to vacate the Rejection Order were made in a manner consistent with its rights under the Bankruptcy Code and it is entitled to the reasonable attorney's fees incurred in their efforts to enforce those rights. We will direct Transamerica to submit a statement of attorney's fees incurred in those efforts for our review.

D. *Administrative Expense Claim Pursuant to Section 503(b)(1)(A)*

▮▮▮ Transamerica also seeks the immediate payment of all the obligations owing under the Transamerica Leases arising for the first fifty-nine days after the Petition Date pursuant to section 503(b)(1)(A). Section 503 of the Bankruptcy Code states in relevant part:

> (a) an entity may timely file a request for payment of an administrative expense, or may tardily file such a request if permitted by the court for cause.

> (b) After notice and a hearing, there shall be allowed administrative expenses, . . . including—

> (1)(A) the actual, necessary costs and expenses of preserving the estate.

11 U.S.C. § 503. Whether someone is entitled to an administrative claim is determined by a two part test: (1) the transaction must be between the creditor and the debtor; and (2) the estate must receive a benefit from the transaction. *See In re O'Brien Environmental Energy, Inc.,* 181 F.3d 527, 532–33 (3d Cir.1999). A lessor is generally entitled to an administrative claim under section 503(b) for the fair rental value of the lessor's property actually used by the debtor. *See, e.g., Zagata Fabricators, Inc. v. Superior Air Products,* 893 F.2d 624, 627 (3d Cir.1990); *In re Cornwall Paper Mills Co.,* 169 B.R. 844, 851 (Bankr.D.N.J.1994). The fair rental value is not necessarily the rent provided in the lease. However, "the rental value fixed in the lease will control, unless there is convincing evidence that such rental rate is unreasonable." *In re F.A. Potts & Co., Inc.,* 137 B.R. 13, 18 (E.D.Pa.1992). *See also Cornwall,* 169 B.R. at 851.

▮▮▮ NPR asserts that because of section 365(d)(10), Transamerica is not entitled to an administrative claim under section 503(b)(1)(A). NPR argues that section 365(d)(10) does not provide for administrative claims for the rent and

other charges accruing in the first fifty-nine days of this case. *See, e.g., In re Forman Enterprises, Inc.,* 2000 WL 1849672, at \*2 (Bankr.W.D.Pa., Dec. 14, 2000) (a lessor under personal property lease is not entitled to an administrative expense claim for rents, attorneys' fees or other lease charges during first fifty-nine days post-petition under section 365(d)(10)); *In re Kyle Trucking, Inc.,* 239 B.R. 198, 202 (Bankr.N.D.Ind.1999) (same).

The majority of courts, however, have held that section 365(d)(10) does not eliminate a lessor's right to apply for an administrative expense claim for the first fifty-nine days of a case. *See, e.g., In re Furley's Transport, Inc.,* 263 B.R. 733, 740–41 (Bankr.D.Md.2001); *In re D.M. Kaye & Sons Transport, Inc.,* 259 B.R. 114, 119 (Bankr.D.S.C.2001); *Energy Income Fund, L.P. v. Compression Solutions, Co., L.L.C. (In re Magnolia Gas Co.),* 255 B.R. 900, 917 (Bankr.W.D.Okla.2000); *In re Pan Am. Airways Corp.,* 245 B.R. 897, 900 (Bankr.S.D.Fla.2000); *In re Russell Cave Co., Inc.,* 247 B.R. 656, 660 (Bankr.E.D.Ky. 2000); *In re Raymond Cossette Trucking, Inc.,* 231 B.R. 80, 84 (Bankr.D.N.D.1999).

The Court in *Furley's Transport* distinguished *Kyle* on the basis that the lessor in the latter case sought an administrative expense claim exclusively under section 365(d)(10). *See Furley's Transport,* 263 B.R. at 740. Thus, the court in *Kyle* did not consider whether the lessor was entitled to an administrative claim under section 503(b)(1)(A).

We agree with *Furley's Transport* and the majority of courts. There is nothing in section 365(d)(10) which expressly precludes a lessor from asserting an administrative claim for the use of its equipment under section 503(b). Section 503(b) gives lessors the right to assert an administrative claim to the extent they can prove the

debtor used their equipment and can quantify the benefit that use conferred on the estate. Section 365(d)(10) gives lessors rights in addition to their rights to assert administrative claims under section 503(b). Namely, section 365(d)(10) quantifies the amount of lessor's administrative claim (as the amount due under the lease) and provides for current payment from the sixtieth day after the filing (as opposed to payment on the effective date of a plan of reorganization).

Consequently, we conclude that Transamerica is entitled to assert an administrative claim for the fair rental value of units actually used by NPR in the first fifty-nine days of this case.

### 1. Per Diem Rental

NPR does not dispute that the use of the Containers post-petition benefitted the estate. NPR disputes, however, the amount of the per diem rental asserted by Transamerica. NPR asserts that the fair rental value should be calculated at $.98 per diem per container as opposed to the higher amounts provided in the Transamerica Leases. NPR relies on the lease with CAI as support. The lease with CAI provides for rental charges between $1.40 and $1.50 per diem per container, for a lease term of five years. However, because there is no charge for the first eighteen months, NPR asserts there is an effective per diem rate of $.98.

We cannot conclude from the evidence presented that $.98 is the appropriate per diem for the use of the Containers in the first fifty-nine days of this case. The $.98 rate is based on very different circumstances from the use of the Containers here. In this instance, we are asked to determine the fair market rental for use of the Containers for only fifty-nine days, after which NPR advised Transamerica it would no longer use them. The $.98 rate

quoted by CAI was based on anticipated use over a term of five years. Further, under the CAI lease, itself, if NPR used the containers for less than five years, then the rental charges were $1.40 to $1.50 per diem per container. Therefore, we cannot conclude that NPR has met its burden of proof and rebutted the presumption that the rates set forth in the Transamerica Leases are reasonable. Transamerica is therefore entitled to an administrative expense claim pursuant to section 503(b)(1)(A) for the per diem rental of the Containers in the first fifty-nine days of this case at the rates set forth in the Transamerica Leases.

### 2. *Other Obligations*

■ Transamerica asserts that any obligation under its leases, to the extent not allowed under section 365(d)(10), is entitled to administrative claim status under section 503(b). These include the flex rental charges, handling charges, drop-off charges, repair service fees, repair cost estimates, lost containers, late charges, taxes, and attorney's fees.

NPR asserts that none of these obligations are administrative claims because they did not provide any benefit to the estate. Transamerica provided no evidence as to how any of these obligations benefitted the estate. Consequently, we cannot conclude that those obligations benefitted the estate or warrant administrative claim status under section 503(b)(1)(A).

■ However, Transamerica asserts that we should allow them an administrative claim for all post-petition obligations as sanctions under Rule 9011(c) for NPR's violation of Rule 9011(b). Rule 9011(b) provides that:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written mo-

tion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

. . . . .

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Bankr.P. 9011(b). Rule 9011(c) further provides that:

If . . . the court determines that subdivision (b) has been violated, *the court may* . . . impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

Fed. R. Bankr.P. 9011(c) (emphasis added). The imposition of Rule 9011 sanctions is a discretionary matter. *See, e.g., In re Nicola,* 258 B.R. 329, 334 n. 1 (Bankr.E.D.Pa.2001).

■ Transamerica asserts that NPR's misrepresentations in the Rejection Motion and at the hearing on that Motion violated Rule 9011(b). We agree. However, we do not believe that sanctions in the form of an administrative claim for *all* of obligations due to Transamerica post-petition is warranted. We have already granted Transamerica relief under Rule 9024 sufficient to compensate it to the extent that it was harmed by NPR's misrepresentations.

However, we agree that something more is necessary as a sanction for NPR's abuse of the judicial process. Therefore, we will direct that, although Transamerica's administrative claim under section 503(b) is normally not payable until the effective

date of a plan, NPR shall pay that administrative claim now.[5]

## IV. CONCLUSION

For the foregoing reasons, we deny the Motion to File under Seal, grant the Motion to Vacate our Order to Reject and grant in part and deny in part the Motion for Immediate Payment of Administrative Expenses.

An appropriate order is attached.

### ORDER

AND NOW, this **14TH** day of **JUNE, 2002**, upon consideration of the Motion of Transamerica Leasing Inc. for Immediate Payment of Administrative Expenses, the Motion to Vacate the Order Approving NPR, Inc.'s Rejection of its Equipment Leases with Transamerica, and NPR, Inc.'s Motion for an Order Granting Leave to File Memorandum of Law and Affidavit under Seal, it is hereby

**ORDERED** that NPR's Motion to File under Seal is **DENIED**; and it is further

**ORDERED** that the Motion to Vacate our Order to Reject is **GRANTED**; and it is further

**ORDERED** that the Transamerica Leases will be deemed rejected on the date that each Container was returned to Transamerica or if lost, on the last date that Containers were returned; and it is further

**ORDERED** that the Motion for Immediate Payment of Administrative Expenses is **GRANTED IN PART AND DENIED IN PART**; and it is further

**ORDERED** that, in accordance with section 365(d)(10), NPR is directed to pay within 10 days hereof the per diem rental charges due under the Transamerica Leases for each Container from the sixtieth day of this case until the Container was returned; and it is further

**ORDERED** that the claim for an administrative claim under section 365(d)(10) for flex rental charges, handling charges, drop-off charges, repair service fees, and repair cost estimates is **DENIED**; and it is further

**ORDERED** that, in accordance with section 365(d)(10), NPR is directed to pay within 10 days hereof late charges and taxes due from the sixtieth day of this case until the return of the Transamerica Containers; and it is further

**ORDERED** that, in accordance with section 365(d)(10), Transamerica shall have an allowed claim for reasonable attorney's fees incurred by it in enforcing its rights under the Transamerica Leases and section 365, subject to its filing a statement of those fees and our review and allowance of them; and it is further

**ORDERED** that, pursuant to section 503(b)(1)(A) and Rule 9011(c), NPR is directed to pay within 10 days hereof Transamerica's administrative expense claim pursuant to section 503(b)(1)(A) for the per diem rental of the Containers used by NPR in the first fifty-nine days of this case at the rates set forth in the Transamerica Leases; and it is further

**ORDERED** that Transamerica's claim for an administrative claim under section 503(b)(1)(A) for flex rental charges, handling charges, drop-off charges, repair service fees, repair cost estimates, lost containers, late charges, taxes, and attorney's fees is **DENIED**; and it is further

---

5. We are also aware that NPR currently has limited access to free cash. Consequently, we will direct NPR not to pay any of its professionals until the Transamerica administrative claim is paid in full.

**ORDERED** that until all claims allowed above are paid, NPR shall not pay any of its professionals any of their allowed fees or expenses.