In re Dutcha Ann BIAZO, Debtor.

In re Phyllis Jean Gibson, Debtor.

In re Cynthia Mary Smith, Debtor.

In re Michael Jay Vaughn, Jolene Louise Vaughn, Debtors.

In re Chris Lyons, Amber R. Lyons, Debtors.

In re David Walton, Dawn M. Walton, Debtors.

In re Richard A. Hicks, Jackie L. Hicks, Debtors.

In re Noble Alhanon Pendland, Debra Ann Pendland, Debtors.

In re Brian Stacey Sherwood, Stephanie Diane Sherwood, Debtors.

In re Ann Louise Connelly, Debtor.

In re Alvin Dean Scobee, Nancy Joann Scobee, Debtors.

In re David Allen Douglas, Sondra Gail Douglas, Debtors.

In re James S. Waddle, Debra J. Waddle, Debtors.

In re Teresa Marie Williams, Debtor.

In re Linda Kay Hawkins, Debtor.

In re Eric Hans Ruchte, Debtor.

Nos. 03–13800–7, 03–14800–7, 03–15700–7, 03–16414–7, 04–10156–7, 04–10447–7, 04–10645–7, 04–10686–7, 04–10714–7, 04–10745–7, 04–11385–7, 03–42706–7, 03–43500–7, 04–40018–7, 04–20148–7, 04–20942–7.

United States Bankruptcy Court, D. Kansas.

July 20, 2004.

Ryan Hodge, Ray Hodge & Associates, L.L.C., Wichita, KS, Chelsea S. Herring, Steven L. Crouch, South & Associates, P.C., Kansas City, MO, for Various Creditors.

Donald C. Astle, Wichita, KS, for Debtor Biazo.

Chad M. Crum, Grant Cannady & Baker PA, Augusta, KS, for Debtor Gibson.

Michael J. Studtmann, Wichita, KS, for Debtor Smith.

John A. Reynolds, Salina, KS, for Debtors Vaughn.

J. Michael Morris, Edward J. Nazar, Redmond & Nazar, L.L.P., Wichita, KS, Trustee on Various Cases.

Sarah L. Newell, Wichita, KS, for Debtors Lyons, Walton.

Richard and Jackie Hicks, Hays, KS, Pro Se.

James P. Rupper, Wichita, KS, for Debtors Pendland.

Steven L. Speth, Wichita, KS, for Debtors Sherwood.

Paula Kidd Casey, Wichita, KS, for Debtor Connelly.

David A. Ricke, El Dorado, KS, for Debtors Scobee.

Dean K. Ryan, Garden City, KS, for Debtors Douglas.

Grady L. Young, Coffeyville, KS, for Debtors Waddle.

Larry E. Schneider, Topeka, KS, for Debtor Williams.

Charles R. Wilson, Overland Park, KS, for Debtor Hawkins.

Christopher R. Coons, Cloon Legal Services, Baldwin City, KS, for Debtor Ruchte.

## ORDER DETERMINING THAT ATTORNEY FEES AND COSTS SOUGHT BY SOUTH & ASSOCIATES IN CONNECTION WITH STAY RELIEF MOTIONS FILED ON BEHALF OF VARIOUS CREDITORS MUST BE DENIED

DALE L. SOMERS, Bankruptcy Judge.

These Chapter 7 matters are before the Court as a result of show cause orders issued on the Court's own motion in each case. The law firm of South & Associates, P.C. ("South"), represents a number of home mortgage lenders or their loan servicing agents, and the firm filed a motion for stay relief on behalf of one of its clients in each of these cases. In fourteen of the cases, the debtors did not respond, and South submitted orders granting the motions, including attorney fees and costs in various amounts, by default. In the other two cases, the debtors objected, indicating their intent to catch up on their payments. One of the debtors later dropped her opposition to stay relief, and the other paid all the amounts claimed to be in default; South submitted orders in both these cases that also allowed attorney fees and costs. Concerned about the authority for granting the attorney fees and costs, the Court struck them from the proposed orders and directed South to show cause why the fees should be allowed. A show cause hearing was held in Wichita on June 9, 2004, in the first eleven cases listed in the caption of this order. The next three cases arose in the Topeka division, and they were set for hearing on June 28, but were continued. The last two cases arose in the Kansas City division and were set for hearing on June 18, but were continued. Chelsea S. Herring of South appeared at the Wichita hearing to support the fees. None of the debtors or their attorneys participated in the hearing. Ms. Herring indicated that South's arguments will be the same for the Topeka and the Kansas City cases. Neither the debtors nor their attorneys in the Topeka or Kansas City cases have indicated any intention to participate in the show cause proceedings.

As explained below, the Court concludes that South's requests for attorney fees and costs must be denied. The requests are both procedurally and substantively deficient.

### FACTS

All sixteen of these cases are Chapter 7 bankruptcies. In fifteen of them, the meeting of creditors required by 11 U.S.C.A. § 341(a) was scheduled within forty days of the filing of the petition, as called for by Federal Rule of Bankruptcy Procedure 2003(a). In thirteen of those, the meeting was concluded on the first

scheduled date; in the other two,[1] the case trustee continued the meeting for a week and concluded it on the continued date. In the sixteenth case, apparently due to a clerical or computer problem, the first meeting was rescheduled twice by the Clerk's Office, and was held and concluded about sixty-five to seventy days after the petition was filed.[2] In eight of the cases, the Chapter 7 trustee filed a no asset report and notice of intended abandonment within 60 days after the conclusion of the meeting of creditors.[3]

In fourteen of the cases, South sought stay relief against the debtors' residences. In six of those fourteen, the debtors listed the residence in their schedules as their homestead, exempt under K.S.A. 60–2301, and declared in their Statement of Intention that they intended to retain the residence.[4] In another three of them, the debtors claimed the residence as exempt, but also declared that they were going to surrender it.[5] In one of the cases, the debtor claimed the residence as exempt, but declared in his Statement of Intention that there was no property he was going to either surrender or retain.[6] No one objected to any of these homestead claims within the time allowed by Federal Rule of Bankruptcy Procedure 4003(b). In another three of the fourteen cases, the debtors

did not claim the residence as exempt, but declared in the Statement of Intention that they intended to surrender the property to their secured creditors.[7] In the last of the fourteen, the debtors initially did not claim the residence as exempt and declared that they were going to surrender it, but later amended their schedules to claim it as their exempt homestead, although they filed no new Statement of Intention; no timely objection to the homestead amendment was filed.[8] In the two cases where the properties were not the debtors' residences, when the debtors filed their bankruptcy petitions, they indicated they intended to surrender the properties to the creditors with liens on them.[9] In one of these cases, believing the estate has equity in the property, the trustee has hired a realtor and is trying to sell it.[10]

All of South's three-page stay relief motions follow the same format: the creditor seeking relief is identified, twelve numbered paragraphs state pertinent facts, and a prayer for relief ends the pleading. South also attached copies of loan and mortgage documents to each motion; at least some of the attachments are essentially illegible. In *In re Gibson*, Case No. 03–14800–7, South filed two such motions, concerning two loans held by the same creditor. No proof of claim has been filed

---

1. *Sherwood,* Case No. 04–10714–7; *Scobee,* Case No. 04–11385–7.

2. *Vaughn,* Case No. 03–16414–7.

3. *Walton,* Case No. 04–10447–7; *Hicks,* Case No. 04–10645–7; *Connelly,* Case No. 04–10745–7; *Scobee,* Case No. 04–11385–7; *Douglas,* Case No. 03–42706–7; *Williams,* Case No. 04–40018–7; *Hawkins,* Case No. 04–20148–7; *Ruchte,* Case No. 04–20942–7.

4. *Gibson,* Case No. 03–14800–7; *Sherwood,* Case No. 04–10714–7; *Connelly,* Case No. 04–10745–7; *Douglas,* Case No. 03–42706–7; *Williams,* Case No. 04–40018–7; *Hawkins,* Case No. 04–20148–7.

5. *Biazo,* Case No. 03–13800–7; *Hicks,* Case No. 04–10645–7; *Scobee,* Case No. 04–11385–7.

6. *Ruchte,* Case No. 04–20942–7.

7. *Smith,* Case No. 03–15700–7; *Vaughn,* Case No. 03–16414–7; *Lyons,* Case No. 04–10156–7.

8. *Walton,* Case No. 04–10447–7.

9. *Pendland,* Case No. 04–10686–7; *Waddle,* Case No. 03–43500–7.

10. *Pendland,* Case No. 04–10686–7.

on behalf of South's clients in any of the cases.

In all of South's motions, only paragraph number 10 mentions attorney fees and costs. Each paragraph 10 begins: "The Debtor has failed to pay the payments due on the Note. The following amounts are now due and owing." Then there is a box divided into two columns, one labeled "Description" and the other "Amount." In all but one of the motions, the next to last row is described as "Attorney Fees/Costs," and an amount is given that ranges from $425 to $800. The last row is described as "Total" and the sum of the previous rows is stated in its "Amount" column. The motion that differs slightly is the one filed in *In re Scobee*, Case No. 04–11385–7. In that one, the last two rows before the "Total" row read: "MFR Filing Fee $150.00," and "MFR Attorney Fees $550.00." Each motion ends with a prayer for relief that does not mention attorney fees:

> WHEREFORE, Movant, its subsidiaries, affiliates, predecessors in interests, successors or assigns, prays that it be granted Relief from the Automatic Stay of 11 U.S.C. § 362 to enforce its lien granted in the Mortgage and for such other and further relief as the Court deems proper.

As indicated, in most of the cases, the debtors filed no response to South's motions. In these, South submitted orders that granted its clients stay relief, and also provided that "the attorney's fees of . . . and filing fee of . . ., which were sought in the Motion for Relief, and which were not objected to by the Debtor, may be assessed against the account of the Debtor." The amounts stated for the attorney fees and filing fee varied, but their sum was the amount listed in the "Attorney Fees/ Costs" part of the box in the motion. In *Gibson*, the debtor objected to both motions, saying only that she would bring her payments on each loan current before the hearings scheduled on them. When the motions came up for hearing, though, it was announced that the debtor would not oppose them. South then submitted orders that included the word "Agreed" in the title, but otherwise were the same as the orders it submitted in the other cases; the orders were submitted under a local rule giving the debtor's attorney ten days to object to their wording.[11] In *In re Hawkins*, Case No. 04–20148–7, the debtor objected to the motion, saying that she was making arrangements to cure the default. She did pay the arrearage, including the attorney and filing fees, and South submitted an order that denied stay relief, but included a provision allowing both fees "as they have already been collected." In all sixteen cases, the Court struck the language awarding attorney and filing fees from the orders, and set those matters for show cause hearings.

In a case not covered by this order that the Court also set for a show cause hearing, *In re Holinde*, Case No. 03–16374–7, the debtors responded in opposition to South's efforts to obtain attorney fees. South filed a brief in that case, indicating that it intended the arguments it made there to apply to all the Wichita and Topeka cases covered by this order. South has not indicated any intent to make any different arguments in the Kansas City cases. Because *Holinde* involves other questions, the Court will issue another order to resolve it. In its brief, South stated that it waived its requests for attorney fees in *In re Smith*, Case No. 03–15700–7, *In re Lyons*, Case No. 04–10156–7, and *In re Sherwood*, Case No. 04–10714–7, "for lack of equity." It also asserted that *In re*

---

11. D. Kan. Local Bankr.Rule 9074.1.

*Douglas*, Case No. 03–42706–7, was moot because a no asset report was filed last November, and the debtors were discharged in May 2004.

## DISCUSSION

In federal courts, the general rule has long been that a party may not recover attorney fees from its opponent in litigation except where authorized by a statute or an enforceable provision in the parties' contract.[12] In a number of cases, courts have ruled that even though state law would allow the parties in a dispute to recover attorney fees, they are not available in bankruptcy court when the litigation concerns issues unique to bankruptcy law and no bankruptcy provision authorizes their recovery.[13] If the issues concern contract enforcement or other state law, then fees can be recovered if state law would allow it.[14]

▉▉▉ But those are general rules that govern the recovery of attorney fees in litigation that might occur between any parties in bankruptcy court. Bankruptcy law much more completely controls and restricts the enforcement of prepetition claims against Chapter 7 debtors and their bankruptcy estates. Most significantly for the question now before the Court, debtors' personal liability on prepetition contracts is, with limited exceptions, discharged in Chapter 7.[15] Creditors whose claims are determined to be nondischargeable may be entitled to have some postpetition attorney fees added to their claims.[16] In these cases, though, it appears the debtors have received or will receive discharges, and none of South's clients have filed complaints objecting to dischargeabil-

**12.** *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 247–71, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

**13.** *In re Sokolowski*, 205 F.3d 532, 535 (2d Cir.2000) (despite state law allowing recovery of attorney fees, debtor could not recover them because litigated issues involved only bankruptcy law); *In re Fobian*, 951 F.2d 1149, 1153 (9th Cir.1991), *cert. denied* 505 U.S. 1220, 112 S.Ct. 3031, 120 L.Ed.2d 902 (1992) (attorney fees not recoverable despite contract provision enforceable under state law because issues litigated, proper application of § 506(a) and § 1225, were peculiar to federal bankruptcy law, not basic contract enforcement); *Johnson v. Righetti (In re Johnson)*, 756 F.2d 738, 740–42 (9th Cir.1985), *cert. denied* 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985) (litigation over relief from automatic stay concerns only federal bankruptcy law, so despite state law authorizing attorney fees based on contract provision, debtor could not recover fees from creditor); *Collingwood Grain, Inc. v. Coast Trading Co. (In re Coast Trading Co.)*, 744 F.2d 686, 693 (9th Cir.1984) (despite fee provisions in contracts, fees not recoverable in bankruptcy litigation because claims made either sought to rescind or disavow contract, or to determine applicability of bankruptcy laws to particular contracts, "a unique, separate area of federal law").

**14.** *Ford v. Baroff (In re Baroff)*, 105 F.3d 439 (9th Cir.1997) (where debtor's success in defeating § 523(a) fraud and breach of fiduciary duty claims depended in part on construction of prior settlement agreement, debtor was entitled to attorney fees under agreement's provision and state law allowing them); *Merced Production Credit Ass'n v. Sparkman (In re Sparkman)*, 703 F.2d 1097, 1099–1100 (9th Cir.1983) (under California law, debtor entitled to attorney fees on counterclaim for breach of contract).

**15.** 11 U.S.C.A. § 727(b); *In re Inge*, 158 B.R. 326, 328 (Bankr.E.D.N.Y.1993) (where attorney fee provision was in note, not mortgage, obligation would be discharged in bankruptcy case, and not enforceable in foreclosure of mortgage).

**16.** *See, e.g., Renfrow v. Draper*, 232 F.3d 688 (9th Cir.2000) (in Chapter 7 litigation under § 523(a), creditor whose debt was determined to be nondischargeable could get postpetition attorney fees to extent litigation involved solely state law issues, but not to extent it involved only federal law issues).

ity under 11 U.S.C.A. § 523(c) or appear to have claims otherwise covered by § 523(a), so the clients will not be able to recover postpetition attorney fees and costs from the debtors personally under their prepetition contracts.

■ The possibility of recovering attorney fees and costs from a debtor's bankruptcy estate is also restricted. Claims against a bankruptcy estate are generally limited under § 502(b) to those owed as of the date of the filing of the debtor's bankruptcy petition. Postpetition attorney fees and costs are ordinarily not allowable, even if the creditor has a contract, enforceable under applicable non-bankruptcy law, that provides for their recovery from the debtor.[17] A few provisions in the Bankruptcy Code that apply to Chapter 7 cases authorize fee recoveries from the estate in limited circumstances. Reasonable attorney fees are expressly available to creditors as an administrative expense under § 503(b)(4) in the few situations where they can recover other expenses under § 503(b)(3)—for example, for filing an involuntary petition or recovering for the estate property the debtor had transferred or concealed. Attorney fees can be available to a creditor when a Chapter 7 trustee wants to assume the debtor's prepetition executory contract or unexpired lease with the creditor because, in order to assume a contract or lease under § 365(b), the trustee must cure

most defaults the debtor has committed under the contract or lease, and the underlying agreement and applicable nonbankruptcy law control what must be done to cure the default.[18]

South's motions seek stay relief first, and fees and costs only secondarily (assuming they ask for them at all). The Court notes that neither § 362, the statute that imposes the automatic stay and also governs relief from the stay, nor Federal Rule of Bankruptcy Procedure 4001, the rule that expressly applies to stay relief motions, contains any authorization for a creditor to recover fees or costs incurred in pursuing such a motion. At least one bankruptcy court has declared that it had no authority to award a creditor the attorney fees it incurred in filing a motion for stay relief.[19] The only relatively general authorization for a creditor to recover from a bankruptcy estate attorney fees and costs incurred in more or less all phases of a bankruptcy case appears in § 506(b), which is the only authority South has cited to support its requests.

■ The Court's show cause orders directed South to provide legal authority supporting its claims for attorney fees and costs in connection with the stay relief motions. In response, as indicated, South relies completely on § 506(b). Some courts have ruled that a creditor seeking attorney fees under § 506(b) must file an application under Bankruptcy Rule 2016.[20]

**17.** *Bronze Group, Ltd. v. Sender (In re Hedged–Investments Assocs., Inc.)*, 293 B.R. 523, 525–28 (D.Colo.2003).

**18.** *See In re Shangra–La, Inc.*, 167 F.3d 843, 847–49 (4th Cir.1999) (under § 365(b), attorney fees can be part of damages that must be paid to cure default and assume unexpired lease, if the fees were incurred attempting to collect sums due from debtor following default and are recoverable under parties' agreement and applicable state law); *In re*

*Crown Books Corp.*, 269 B.R. 12, 15–18 (Bankr.D.Del.2001) (same).

**19.** *In re Inge*, 158 B.R. 326, 327 (Bankr. E.D.N.Y.1993) (denying fee request for several reasons, including that, "[T]his court does not enforce notes and mortgages. At best, this court has limited jurisdiction only to vacate the stay to permit enforcement of these obligations in state court.").

**20.** *See Tate v. NationsBanc Mortgage Corp. (In re Tate)*, 253 B.R. 653, 660 (Bankr.W.D.N.C.

Such a requirement would help the Court determine whether the fees sought are reasonable, as required for them to be allowed under § 506(b). At least two other courts have disagreed, however, ruling that other procedures, such as a proof of claim specifically claiming the fees, can be sufficient to satisfy the due process requirements of notice and an opportunity to present objections.[21] Both the courts that held a proof of claim could be sufficient went on to hold, however, that the creditors before them either had not, or at least may not have, adequately disclosed or supported their requests.[22] Thus, under either line of cases, the debtor (and any other party with an interest in the question) is entitled to notice sufficient to inform him or her that the creditor is seeking postpetition fees and costs under § 506(b), and also contends that all the prerequisites for an allowance of such fees and costs have been satisfied.

Perhaps a stay relief motion might be crafted to satisfy due process. However, even assuming a stay relief motion can commence an adequate procedure for seeking attorney fees and costs under § 506(b), South's motions clearly do not provide sufficient notice. They simply cannot be read to include any request for an allowance of attorney fees and costs. The motions introduce the boxed items as "amounts now due and owing." So far as the Court is aware, everything South puts

in the box but the attorney fees and costs are amounts the debtors allegedly defaulted on before the stay relief motion was filed, so the more natural interpretation of the listed fees and costs would be that they are likewise amounts the debtors have defaulted on, not amounts the creditor is asking the Court to allow as an addition to its claim. The one motion that identified the amounts as "MFR Filing Fee" and "MFR Attorney Fees" provides a minimal clue about the status South now claims for them, but only if one realizes that South's abbreviation "MFR" probably is short for "Motion for Relief," and is also aware that, in the bankruptcy community, "Motion for Relief" is fairly common shorthand for "Motion for Stay Relief." But even this far-from-enlightening clue hides the fact that South wants to have the fees and costs allowed for its filing of the current motion; the listed fees and costs could be some that were allowed in the past for some previous motion. Because, as the orders South submitted make clear (while its motions do not), South actually intended to seek the allowance of fees and costs as additional relief in its motions, the Court is convinced that any parties to whom the motions must be noticed, such as the trustee and the debtors and their attorneys, are entitled to be informed of this fact. Given South's motions, the default orders it submitted would violate

2000); *In re Gifford,* 256 B.R. 661, 662 n. 2 (Bankr.D.Conn.2000) (indicating court agreed with *Tate* and in future, would disallow fees included in proof of claim).

**21.** *See Powe v. Chrysler Financial Corp., L.L.C. (In re Powe),* 281 B.R. 336, 344–48 (Bankr. S.D.Ala.2001) (either applying under § 503 and Rule 2016, or filing proof of claim specifically claiming postpetition attorney fees satisfies due process requirements of notice and opportunity for hearing); *In re Atwood,* 293 B.R. 227, 231–32 (9th Cir. BAP 2003) (agree-

ing with *Powe,* and rejecting *Tate,* cited above in n. 11, holds proof of claim can be sufficient to claim fees under § 506(b)).

**22.** *Atwood,* 293 B.R. at 232–33 (reversing allowance of fees included in proof of claim because creditor provided nothing in proof of claim or in response to objection to claim to show reasonableness of fees); *Powe,* 281 B.R. at 345–48 (denying creditor's summary judgment motion on adequacy of disclosure and reasonableness of fees).

Federal Rule of Civil Procedure 54(c),[23] which declares that a "judgment by default shall not be different in kind or exceed in amount that prayed for in the demand for judgment."

■ Even if South could overcome the procedural shortcomings of its motions, its attorney and filing fees would not be recoverable under § 506(b). That provision reads:

> To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

This language establishes four prerequisites to an allowance of fees and costs: (1) the creditor must have an allowed secured claim; (2) the creditor must be oversecured; (3) the fees and costs must be provided for in the creditor's agreement with the debtor; and (4) the fees and costs sought must be reasonable.[24]

■ The first question that arises under § 506(b), then, is whether any of South's clients has "an allowed secured claim." Under § 501(a), creditors may file a proof of claim if they wish. Under § 502(a), absent objection, filed proofs of claim are deemed allowed, and on objection, § 502(b) directs the Court to determine the proper amount to allow. Nothing in the Bank-

ruptcy Code or Rules provides for the claim of any creditor to be allowed in a Chapter 7 case without a filed proof of claim.[25] Section 506(a), in turn, defines what makes an allowed claim "a secured claim." In simplified terms, it makes an allowed claim a secured claim to the extent of the value of the creditor's collateral or the petition-date amount of the claim, whichever is less. None of South's clients has filed a proof of claim, so none of them has an allowed claim in any of these cases. Because they do not have allowed claims, they also do not have "secured claims" under § 506(a). Consequently, none of them has "an allowed secured claim" that might qualify for an allowance of attorney fees and costs under § 506(b).

■ Even if South's clients had allowed secured claims, none of South's motions for relief from stay allege that: (1) the property securing its client's claim is worth more than the amount owed to the client; (2) the client's agreement with the debtor or debtors provides for the recovery of attorney fees and costs; or (3) that the fees and costs it seeks are reasonable. As indicated above, under § 506(b), postpetition fees and costs are available only to the extent a claim is oversecured and the fees and costs are reasonable.[26] In addition, fees and costs are allowable only if provided for by the agreement with the debtors that gave the creditor the lien it is trying to enforce.[27] A creditor seeking such recovery has the burden of proof on

---

**23.** Bankruptcy Rule 4001(a)(1) provides that stay relief motions must follow the procedures specified in Rule 9014 for contested matters, Rule 9014(c) makes Rule 7054 apply to contested matters, and Rule 7054 makes Civil Rule 54(a) through (c) apply.

**24.** *In re Kord Enterprises II,* 139 F.3d 684, 686–87 (9th Cir.1998).

**25.** *Cf.* Fed. R. Bankr.P. 3003(c) (in Chapter 9 and 11 cases, only creditors whose claims are

not listed on the debtor's schedules or are listed as disputed, contingent, or unliquidated must file proofs of claim).

**26.** *See United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

**27.** *Rushton v. State Bank (In re Gledhill),* 164 F.3d 1338, 1340–43 (10th Cir.1999).

all three points.[28] Although South attached various mortgage documents to its motions, it failed to identify in the motions any language in the documents that might authorize its clients to collect attorney fees and costs, or even allege that they contain such language. While it is true that the recovery of attorney fees under a mortgage is no longer prohibited under Kansas law,[29] their recovery is not mandated, either. That is, the change in Kansas law did not make provisions for the recovery of attorney fees an automatic part of new mortgages. Since 1994, K.S.A. 58–2312 has read:

> Except as otherwise provided by law, any note, mortgage or other credit agreement may provide for the payment of reasonable costs of collection, including, but not limited to, court costs, attorney fees and collection agency fees, except that such costs of collection: (1) May not include costs that were incurred by a salaried employee of the creditor or its assignee; and (2) may not include the recovery of both attorney fees and collection agency fees.[30]

Even if South's client's agreement with its debtor or debtors provides for the recovery of attorney fees and court filing fees, that client is not entitled to recover such fees under either § 506(b) of the Bankruptcy Code or under Kansas law unless the language of the fee provision is broad enough to cover a stay relief motion filed in a bankruptcy case.[31] South's motions fail to allege, much less to provide any

proof, that its clients can satisfy any of the final three requirements of § 506(b).

In order for South's stay relief attorney fees and costs to be reasonable, filing a stay relief motion had to be reasonable. For most chapter 7 cases, the Court is convinced that filing a stay relief motion is not so necessary as to render the attorney fees and costs incurred to do so reasonable. When a bankruptcy petition is filed on the eve of a foreclosure sale, filing an immediate motion for stay relief is probably reasonable, but if the debtor was only a month or two behind on payments and no foreclosure case was pending when the petition was filed, an early motion is probably not necessary. A secured creditor might have strategic reasons for filing a stay relief motion at any time. Further, absent a prior bankruptcy court ruling to the contrary, in a particular case, a secured creditor may always seek in a state court foreclosure action to recover from its collateral fees and costs it incurred pursuing a relief motion. However, the cases before the Court illustrate two typical situations where filing a stay relief motion would not normally meet the reasonableness standard required for this Court to award attorney fees and costs.

■ The first situation arises from the fact that South's clients were stayed from foreclosing their liens on these Chapter 7 debtors' properties only so long as the properties were property of their bank-

**28.** *In re Williams,* 183 B.R. 895, 897 (D.Kan. 1995).

**29.** *See* K.S.A. 58–2312 (Ensley 1983) (former provision outlawing provision for payment of attorney fees in notes, mortgages, and other "evidence of indebtedness").

**30.** *See* 1994 Kan. Sess. L. ch. 276, § 3 (eff. July 1, 1994) (enacting present version of 58–2312).

**31.** *Compare Williams,* 183 B.R. at 898–99 (provision for attorney fees incurred in "collection" of note and "realizing on" security interest broad enough to include fees incurred in Chapter 12 bankruptcy case) *with In re Nickleberry,* 76 B.R. 413, 425 (Bankr.E.D.Pa. 1987) (provision about "foreclosure proceedings" not broad enough to include bankruptcy case).

462

ruptcy estates.[32] Where the debtors claimed the property as an exempt homestead, the property ceased to be property of the estate once the exemption claim became final.[33] That happened when the time to object to the exemption passed, either 30 days after the conclusion of the meeting of creditors held pursuant to § 341(a), or 30 days after the filing of an amended schedule that newly made the homestead exemption claim.[34] In ten of these cases, the debtors claimed South's client's collateral as their exempt homestead, the creditors meeting was concluded within 45 [35] days of the filing of the bankruptcy petition, and no timely exemption objections were filed. In those cases, then, once the objection time passed, the automatic stay no longer protected the debtors' homesteads and South's clients were free to enforce their liens against them. As is true for most Chapter 7 cases filed in this District, that happened so soon after the debtors filed for bankruptcy that it was unreasonable for South to file motions for stay relief in those cases.

The second illustration of a situation when a stay relief motion is generally un-

necessary appears in eight of the cases. In these, the trustees took advantage of District of Kansas Local Bankruptcy Rule 6007.1 by filing notices of abandonment of the debtors' nonexempt property within 60 days of the date set for the meeting of creditors, making the abandonment effective 75 days after the meeting of creditors date, unless an objection was filed. No objections were filed in any of the cases, so the former property of the estate, including South's clients' collateral, left the bankruptcy estates when the trustee abandonments took effect.[36]

At the very least, South could often have avoided the fee for filing its motion. In nine of these cases, the debtors indicated they were going to surrender the property to South's client. As a result, South should have used the procedure set out in District of Kansas Local Bankruptcy Rule 4001(a).1(c). That rule treats a debtor's stated intention to surrender a creditor's collateral as the debtor's agreement to stay relief for the creditor (unless the Statement of Intention is amended or withdrawn). No filing fee is presently re-

**32.** 11 U.S.C.A. § 362(c)(1).

**33.** *In re Heintz,* 198 B.R. 581, 585 (9th Cir. BAP 1996); *see also Owen v. Owen,* 500 U.S. 305, 308, 111 S.Ct. 1833 (1991) (when property becomes exempt, it is withdrawn from estate and from creditors for benefit of debtor); *In re Bell,* 225 F.3d 203, 215–16 (2d Cir.2000) (property exempted before Chapter 11 converted to Chapter 7 exited estate and revested in debtor, and nothing in Bankruptcy Code brought it back into estate following conversion); *In re Smith,* 235 F.3d 472, 477–78 (9th Cir.2000) (same).

**34.** See Fed. R. Bankr.P. 4003(b); *Taylor v. Freeland & Kronz,* 503 U.S. 638, 642–45, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) (unless timely objection filed, property claimed as exempt is exempt, even though no good faith basis for exemption claim exists); *In re Kazi,* 985 F.2d 318, 323 (7th Cir.1993) (when ex-

emptions are amended, new period for objecting does not apply to exemptions not affected by amendment); *Bernard v. Coyne (In re Bernard),* 40 F.3d 1028, 1032 (9th Cir.1994), *cert. denied* 514 U.S. 1065, 115 S.Ct. 1695, 131 L.Ed.2d 559 (1995) (same).

**35.** This would have been 40 days, but in two of the cases, the creditors meetings were continued for a week and were concluded a few days outside the 20–to–40–day time range set by Bankruptcy Rule 2003(a).

**36.** The Court notes that the debtors claimed the properties as their exempt homesteads in their initial schedules in seven of these eight cases, and in the eighth, amended their schedules later to make a homestead claim, so in most or all these cases, the properties left the estates through the exemptions, which became final before the trustees' abandonments took effect.

quired for an agreed motion and order for stay relief submitted in compliance with that rule.

In fact, the Court is hard-pressed to think of a situation that frequently arises where a secured creditor might appropriately, as a matter of course, seek fees and costs under § 506(b) in a Chapter 7 case. One time would appear to be where the debtor does not claim a creditor's collateral as exempt and the trustee does not abandon the property pursuant to D. Kan. LBR 6007.1. The delay that occurs while the trustee determines whether the value of the property provides sufficient equity to pay off the creditor's lien and leave money for the estate, or while the trustee tries to market the property could reasonably prompt a motion for stay relief, and lead the Court on a procedurally correct request, to find that the attorney fees and costs incurred were reasonable.

South appears to intend to include attorney fees and costs in all the stay relief motions it files for its home mortgage clients, and its concessions that its clients are not oversecured in the *Smith, Lyons,* and *Sherwood* cases raise the specter that South might not have made the reasonable inquiry required by Bankruptcy Rule 9011(b) on that point before seeking fees and costs in any of these cases, but the Court will leave that question for another day. The Court also rejects South's assertion that its request for fees and costs in *Douglas* is moot. As the Court's discussion should make clear, the Court is convinced that federal bankruptcy law precludes South's clients from recovering fees and costs under § 506(b) in connection with their stay relief motions in these cases. As South raised the issue of attorney fees and costs in these cases and this Court has ruled that the requested fees and costs are not reasonable, the state courts in which South's clients will pursue foreclosures should not be given the chance to reach a different conclusion.

## CONCLUSION

In these cases, South's clients are not entitled to the allowance of the attorney fees and costs they incurred in filing and prosecuting their stay relief motions. The motions fail to give adequate notice to the debtors and other interested parties to afford them the opportunity to object and be heard, as required by due process before relief can be granted. The motions fail to ask for an award of attorney fees and costs. None of South's clients has an allowed secured claim, as required to qualify for fees and costs under § 506(b). South's motions do not allege, much less offer any proof, that: (1) South's client is oversecured; (2) the client's contract with the debtor authorizes a recovery of attorney fees and costs incurred in filing a stay relief motion; or (3) the fees and costs sought are reasonable. In fact, it would seldom be reasonable for an oversecured creditor to ask this Court to allow fees and costs it incurred in filing a stay relief motion in a Chapter 7 bankruptcy case. The requests for fees and costs in all these cases must be denied. In addition, in the *Hawkins* case, South and its client must refund to the debtor the attorney fees and costs that they collected from her without the Court's authorization.

IT IS SO ORDERED.