Filed 5/16/16  C. Man, LLC v. Melon Partners, LLC CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| C. MAN, LLC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MELON PARTNERS, LLC,<br><br>    Defendant and Respondent. | B265443<br><br> (Los Angeles County<br> Super. Ct. BC533200) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard E. Rico, Judge.  Affirmed.

Schreiber & Schreiber, Edwin C. Schreiber, Eric A. Schreiber and Ean M. Schreiber for Plaintiff and Appellant.

Attlesey | Storm, Keith A. Attlesey and Suzanne S. Storm for Defendant and Respondent.

_____

## INTRODUCTION

Civil Code section 2924g, subdivision (d), provides that, when a nonjudicial foreclosure sale has been postponed by a stay, the trustee must wait seven days after the expiration or termination of the stay before conducting the sale.[1]  Section 2924g, subdivision (e), however, provides that the seven-day waiting period of section 2924g, subdivision (d), does not apply "if postponement of a sale is based on a stay imposed by Title 11 of the United States Code (bankruptcy)," in which case the sale may occur immediately after the expiration of the bankruptcy stay.  The stay in this case was a temporary stay pending appeal issued and then vacated by the Bankruptcy Appellate Panel of the Ninth Circuit.  Does subdivision (d) or (e) of section 2924g apply to such a stay?  We conclude that, under the procedural facts of this case, subdivision (e) applies.  Therefore the trustee did not violate subdivision (d) by proceeding with the foreclosure sale immediately after the stay expired, and the trial court properly granted summary judgment on a claim that the sale violated subdivision (d).

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Debt and Its Travels*

On August 29, 2005 C. David Benfield, trustee of the Pennyman Trust, borrowed $1.84 million from Rancho Bank, secured by property in West Covina, California, where Benfield operated a nursing facility.  Benfield signed a promissory note and deed of trust naming Rancho Bank as the beneficiary.  Subsequently, Vineyard Bank acquired Rancho Bank, the Federal Deposit Insurance Corporation (FDIC) took over Vineyard Bank, and in January 2013 the FDIC assigned the note and deed of trust to California Bank & Trust, which in turn assigned it in May 2013 to Melon Partners, LLC.

---

[1]    Undesignated statutory references are to the Civil Code.

B.    *The Foreclosure and the Bankruptcy*

Meanwhile, in January 2013 California Bank & Trust filed a substitution of trustee, and a notice of default and election to sell the property under the deed of trust, stating that the amount due was $1,698,334.59.  In February 2013 Benfield transferred his interest in the property to C. Man, LLC by quitclaim deed.  On June 11, 2013 Melon Partners recorded a substitution of trustee, and the new trustee recorded a notice of trustee's sale, setting the sale for July 5, 2013, at 9:00 a.m., "[b]ehind the fountain located in Civic Center Plaza, 400 Civic Center Plaza, Pomona, CA  91766."

On July 2, 2013, three days before the scheduled foreclosure sale, C. Man filed a bankruptcy petition pursuant to Chapter 11 of the United States Bankruptcy Code.  On September 16, 2013 the bankruptcy court ordered the United States Trustee and Melon Partners, as a secured creditor, to file motions to dismiss the bankruptcy case.  Melon Partners filed the motion on September 20, 2013, arguing that C. Man suffered from "new debtor syndrome" and had filed the bankruptcy case in bad faith.[2]  On November 15, 2013 the bankruptcy court granted Melon Partners' motion and dismissed C. Man's Chapter 11 case, with a 180-day bar to refiling.

---

[2]    "The term 'new debtor syndrome' identifies a pattern of conduct which exemplifies bad faith cases.  [Citation.]  Indicia of the new debtor syndrome include: (1) transfer of distressed property into a newly created corporation; (2) transfer occurring within a close proximity to the bankruptcy filing; (3) transfer for no consideration; (4) the debtor has no assets other than the recently transferred property; (5) the debtor has no or minimal unsecured debt; (6) the debtor has no employees and no ongoing business; and (7) the debtor has no means, other than the transferred property, to service the debt on the property."  (*In re Duvar Apt., Inc.* (9th Cir. BAP 1996) 205 B.R. 196, 200; see Ponoroff & Knippenberg, *The Implied Good Faith Filing Requirement: Sentinel of an Evolving Bankruptcy Policy* (1991) 85 Nw. U. L. Rev. 919, 927 [the "pattern of conduct, involving an eve-of-foreclosure filing by a debtor whose primary asset consists of troubled collateral, has recurred frequently enough in recent years to earn its own moniker, the 'new debtor syndrome'"].)

C. Man appealed to the Bankruptcy Appellate Panel of the Ninth Circuit, and filed an "emergency motion for stay pending appeal." On November 15, 2013 the Bankruptcy Appellate Panel granted a temporary stay "to preserve the status quo pending further order of the Panel in order to give the Panel time to consider the stay motion and any opposition that may be filed." On November 22, 2013, however, the Bankruptcy Appellate Panel denied C. Man's motion for a stay pending appeal. The panel concluded that C. Man had "not established that it is entitled to a stay pending appeal" and had "not established a sufficient likelihood of success on the merits to warrant a stay." The panel also vacated the "temporary stay previously granted." The Bankruptcy Appellate Panel issued its order on November 22, 2013, prior to 10:50 a.m., which is when bankruptcy counsel for Melon Partners sent an email to the trustee attaching the order that vacated the temporary stay, and advised the trustee, "According[ly], there is no present stay preventing the foreclosure sale."

At 3:00 p.m. on November 22, 2013 the trustee conducted the foreclosure sale. Melon Partners purchased the property at the sale for $1,953,309.75, the total amount of the unpaid debt. Melon Partners filed an unlawful detainer action against C. Man on December 13, 2103, and obtained a judgment for possession and damages on January 28, 2014.

C.    *The Litigation and the Order Granting Summary Judgment*

C. Man filed this action on January 15, 2014. C. Man alleged that the trustee's sale was invalid because the trustee had not conducted the sale in compliance with section 2924g, subdivision (d), which provides that when a trustee's sale has been stayed, the sale may not proceed until at least seven days after the order staying the sale has expired or terminated. C. Man alleged that, although section 2924g, subdivision (e), provides an exception to the seven-day post-stay waiting period, the exception in that subdivision did not apply. C. Man alleged causes of action for quiet title, declaratory relief, cancellation of the trustee's deed, and injunctive relief.

4

Melon Partners filed a motion for summary judgment on the ground that the statute on which C. Man's action was based, section 2924g, subdivision (d), did not apply. Melon Partners argued that the applicable provision was section 2924g, subdivision (e). Subdivision (e) provides that, notwithstanding subdivision (d), "if postponement of a sale is based on a stay imposed by Title 11 of the United States Code (bankruptcy), the sale shall be conducted no sooner than the expiration of the stay imposed by that title and the seven-day provision of subdivision (d) shall not apply."

In opposition to the motion, C. Man argued that section 2924g, subdivision (d), not section 2924g, subdivision (e), applied, because the Bankruptcy Appellate Panel's November 15, 2013 temporary stay was not "'a stay imposed by Title 11 of the United States Code,' i.e., the automatic state of Bankruptcy Code § 362 (11 USC § 362) which comes into effect when a Chapter 11 case is filed." (Emphasis omitted.) C. Man argued that the exception of section 2924g, subdivision (e), "refers only to the automatic stay 'imposed'" (emphasis omitted) by the Bankruptcy Code, and "it does not apply to the discretionary Temporary Emergency Stay granted by the [Bankruptcy Appellate Panel,] which is the type of Court Order described in [section 2924g, subdivision (d)], and which, therefore, required a minimum waiting period of seven . . . days before the sale could be conducted."

The trial court granted Melon Partners' motion for summary judgment, finding C. Man's argument "unpersuasive." The court ruled: "[C. Man] only argues that the 'discretionary' award by the Bankruptcy Appellate Panel was not 'imposed' by Title 11. This makes little sense as any order made pursuant to Title 11 is 'imposed' on the parties. Under the plain reading of the statute, irrespective of the legislative history, [Melon Partners'] argument is correct. Sub[division] (e) to Section 2924g contains an explicit exemption to the applicability of sub[division] (d)'s seven-day hold. Further, [C. Man] cites no relevant authority to show that section 2924g(e) is limited to automatic stays imposed by Bankruptcy Code § 362(a)."

The court entered judgment in favor of Melon Partners. C. Man timely appealed.

DISCUSSION

A.      *The Statutes Governing Postponement of Nonjudicial Foreclosure Sales*

"The California Legislature has established a comprehensive set of legislative procedures governing nonjudicial foreclosures." (*Orcilla v. Big Sur, Inc.* (2016) 244 Cal.App.4th 982, 995.) "'"[S]ections 2924 through 2924k provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust." [Citations.] This comprehensive statutory scheme has three purposes: "(1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser."'" (*Banc of America Leasing & Capital, LLC v. 3 Arch Trustee Services, Inc.* (2009) 180 Cal.App.4th 1090, 1096.) A nonjudicial foreclosure "'"sale will be scrutinized by courts with great care and will not be sustained unless conducted with all fairness, regularity and scrupulous integrity."'" (*Millennium Rock Mortg., Inc. v. T.D. Service Co.* (2009) 179 Cal.App.4th 804, 809; see *Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1448 ["'[b]ecause nonjudicial foreclosure is a "drastic sanction" and a "draconian remedy" [citation], "'[t]he statutory requirements must be strictly complied with'"'"].)

Section 2924g governs, among other things, postponements of nonjudicial foreclosure sales. Section 2924g, subdivision (d), provides in relevant part: "The notice of each postponement and the reason therefor shall be given by public declaration by the trustee at the time and place last appointed for sale. A public declaration of postponement shall also set forth the new date, time, and place of sale and the place of sale shall be the same place as originally fixed by the trustee for the sale. No other notice of postponement need be given. However, the sale shall be conducted no sooner than on the seventh day after the earlier of (1) dismissal of the action or (2) expiration or termination of the injunction, restraining order, or stay that required postponement of the sale, whether by entry of an order by a court of competent jurisdiction, operation of law,

6

or otherwise, unless the injunction, restraining order, or subsequent order expressly directs the conduct of the sale within that seven-day period." (See *Hicks v. E.T. Legg & Associates* (2001) 89 Cal.App.4th 496, 506-507 ["section 2924g, subdivision (d) was amended to substantially its current form, requiring a minimum 7-day interval between the expiration of an injunction or stay precluding a sale and the date of sale, absent a court order allowing an earlier sale"]; cf. *Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1107-1109 [section 2924g, subdivision (d), allows "sales within the normal seven-day waiting period if the court expressly so directs"].) Section 2924g, subdivision (e), provides: "Notwithstanding the time periods established under subdivision (d), if postponement of a sale is based on a stay imposed by Title 11 of the United States Code (bankruptcy), the sale shall be conducted no sooner than the expiration of the stay imposed by that title and the seven-day provision of subdivision (d) shall not apply."

### B. *Subdivision (e) of Section 2924g Applies*

The parties disagree whether subdivision (d) or subdivision (e) of section 2924g applies to this case because they disagree over the meaning of the words, in subdivision (e), "a stay imposed by Title 11" of the Bankruptcy Code. C. Man argues that this language refers only to the automatic stay that arises by operation of law when a debtor files a petition for Chapter 11 bankruptcy, not to orders like the temporary stay issued by the Bankruptcy Appellate Panel. Thus, according to C. Man, when the Bankruptcy Appellate Panel vacated its order imposing a temporary stay on November 22, 2013, section 2924g, subdivision (d), precluded the trustee from conducting the sale until seven days later, November 29, 2013. Melon Partners argues that the language "a stay imposed by Title 11" in subdivision (e) "applies to all stays imposed by Title 11 and not just automatic stays." (Emphasis omitted.) Thus, according to Melon Partners, when the Bankruptcy Appellate Panel vacated its order imposing a stay on November 22, 2013, section 2924g, subdivision (e), allowed the trustee to proceed with the sale immediately without waiting the seven days required by subdivision (d). We review this issue of

7

statutory interpretation de novo. (See *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332; *Zintel Holdings, LLC v. McLean* (2012) 209 Cal.App.4th 431, 440, fn. 2.)

Each side's argument misses the mark. The Bankruptcy Appellate Panel's stay did not postpone the foreclosure sale. The Bankruptcy Appellate Panel's stay temporarily stayed the dismissal of the bankruptcy case that the bankruptcy court had ordered when it granted Melon Partners' motion to dismiss. Therefore, contrary to C. Man's argument, when the Bankruptcy Appellate Panel vacated its stay, that court did not terminate a "stay that required postponement of the sale." Contrary to Melon Partners' argument, when the Bankruptcy Appellate Panel vacated its temporary stay pending appeal it did not vacate a "stay imposed by Title 11" because all stays issued by bankruptcy courts are issued pursuant to a bankruptcy statute or rule and therefore are under the authority of Title 11. Instead, when the Bankruptcy Appellate Panel vacated its temporary stay, it allowed the bankruptcy court's order dismissing C. Man's bankruptcy case to take effect.

And dismissal of a bankruptcy case terminates the automatic stay immediately. (See *In re Lomagno* (1st Cir. 2005) 429 F.3d 16, 17 ["when the petition giving rise to the stay is dismissed, the stay terminates immediately, and creditors may proceed with foreclosure"]; *In re Koo* (B.A.P. 9th Cir. 2013), 2013 WL 5460138, at p. 3 ["'dismissal of the bankruptcy petition immediately terminates both the automatic stay and the bankruptcy estate'"]; *In re Kline* (B.A.P. 10th Cir. 2012) 472 B.R. 98, 103 ["[t]he automatic stay and the protections it offers terminate immediately upon dismissal of a bankruptcy case"].) Unlike an order granting relief from the automatic stay, an order dismissing a bankruptcy case is effective, and terminates the automatic stay, immediately. (*In re Williams* (Bankr. D. Alaska 2013) 2013 WL 1089262, at p. 2.) Thus, with the dismissal of the bankruptcy case, the automatic stay "imposed by Title 11" that had postponed the foreclosure sale terminated. Therefore, section 2924g, subdivision (e), applied and allowed the trustee to proceed immediately with the foreclosure sale.

8

The legislative history of section 2924g, subdivision (e), cited by Melon Partners, does suggest that the Legislature enacted and later amended section 2924g, subdivision (e), to apply where the bankruptcy court grants a creditor relief from the automatic stay, not where, as here, the bankruptcy court dismisses a bankruptcy case. This history reveals that the Legislature enacted section 2924g, subdivision (e), which was sponsored by the California Trustees Association (CTA), for a very specific reason: to avoid imposing the seven-day waiting period of section 2924g, subdivision (d), when Bankruptcy Rule 4001(a)(3) already imposed a 10-day waiting period after an order granting relief from the automatic stay. As the bill analyses before the Senate Judiciary Committee and Senate Rules Committee explained: "Existing law provides that a sale of property pursuant to a power of sale under a mortgage or deed of trust may be postponed and establishes procedures for giving notice of the postponement and setting a new date of sale. (Civil Code Section 2924g.) Existing law also provides that, after specified postponements, a sale described above shall be conducted no sooner than seven days after 'expiration or termination of the injunction, restraining order, or stay (which required postponement of the sale), whether by entry of an order by a court of competent jurisdiction, operation of law, or otherwise, unless the injunction, restraining order, or subsequent order expressly directs the conduct of the sale within that seven-day period.' (Civil Code Section 2924g(d)(2).) Existing federal law provides that in bankruptcy cases stay orders expire ten days after entry of the order granting relief from stay. (Federal Rule of Bankruptcy, Rule 4001.) [¶] This bill would provide that in cases where a stay in bankruptcy court has been granted, the sale shall be conducted no sooner than the expiration on the stay granted under Bankruptcy Code (i.e., ten days after entry of the order granting relief from stay).

"CTA contends that confusion has been created between the interaction between state and federal law, with some trustees interpreting the provisions to mean that the ten-day period under federal law must be added to the seven-day waiting period under state law to create a new 17-day waiting period to conduct the sale after relief from stay. CTA states that this proposal merely clarifies that in bankruptcy cases, the longer federal

period applies, but not both state and federal periods."[3] (Sen. Rules Com., Office of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2284 (1999-2000 Reg. Sess.); Sen. Com. on Judiciary, com. on Assem. Bill No. 2284 (1999-2000 Reg. Sess.) for hearing on June 29, 2000; see Sen. Bill No. 958, Third Reading, September 10, 2001 (2001-2002 Reg. Sess.); Assem. Com. on Judiciary, Analysis of Sen. Bill No. 958 (2001-2002 Reg. Sess.) for hearing on July 3, 2001.)

Moreover, limiting section 2924g, subdivision (e), to orders granting relief from the automatic stay, would be consistent with the overall purpose of the postponement provisions of the statute and would avoid undesirable consequences. The purpose of the seven-day period in section 2924g, subdivision (d), is "'to provide sufficient time for a trustor to find out when a foreclosure sale is going to occur following the expiration of a court order which required the sale's postponement'" and to "'provide the trustor with the opportunity to attend the sale and to ensure that his or her interests are protected.'" (*Ragland v. U.S. Bank Nat. Assn.* (2012) 209 Cal.App.4th 182, 202.)[4] When a creditor obtains relief from the automatic stay, the trustor has 14 (formerly 10) days under

---

[3] The "ten-day period under federal law" refers to Rule 4001 of the Federal Rules of Bankruptcy Procedure (Bankruptcy Rule 4001), which governs relief from the automatic stay. (See *In re Crepes 1, Inc.* (9th Cir. B.A.P. 2010) 2010 WL 6452900, p. 1; *In re Biazo* (Bankr.D.Kan. 2004) 314 B.R. 451, 458.) When the Legislature added section 2924g, subdivision (e), in 2000 and amended it in 2001, Bankruptcy Rule 4001(a)(3) provided, "An order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 10 days after the entry of the order, unless the court orders otherwise." Effective December 1, 2009, Bankruptcy Rule 4001(a)(3) was amended to increase the stay from 10 to 14 days. (*Basilio v. TDR Servicing, LLC* (E.D.Cal. 2009) 2009 WL 5218038, at p. 2, fn. 1; Herzog's Bankr. Forms & Prac. § 1:41.)

[4] The bill adding this language to section 2924g, subdivision (d), "was sponsored by the Western Center on Law and Poverty in response to an incident in which a foreclosure sale was held one day after a TRO was dissolved. The property was sold substantially below fair market value. The trustor, who had obtained a purchaser for the property, did not learn of the new sale date and was unable to protect his interests at the sale." (*Hicks*

Bankruptcy Rule 4001(a)(3) to determine when and where the sale will occur. This is particularly important because, under California law, after the expiration of a stay that required postponement of the sale, the trustee does not have to give notice of the sale to the trustor, other than making a "public declaration" setting forth "the new date, time, and place of sale." (§ 2924g, subd. (d); see *Tully v. World Savings & Loan Assn.* (1997) 56 Cal.App.4th 654, 663-664 ["'California law . . . does not require further notice of any kind when a continued sale follows a termination of the automatic stay," and instead "merely requires in Civil Code § 2924g(d) that the sale cannot take place until seven days after the stay terminates, absent an express court order to the contrary"]; 5 Miller & Starr, Cal. Real Estate (4th ed. 2015) § 13:245 ["[t]he trustor is responsible for remaining informed about the status of the foreclosure proceedings," and "[w]hen there have been postponements during the period of the automatic stay, a new notice of sale is not required to conduct the sale on the postponed date"].) When a bankruptcy stay expires because the bankruptcy case has been dismissed, the waiting period of Bankruptcy Rule 4001(a)(3) does not apply, and the trustor still needs time to determine when the sale will occur.

The Legislature, however, enacted section 2924g, subdivision (e), with the language "if postponement of a sale is based on a stay imposed by Title 11 of the United States Code," without distinguishing between whether the expiration of the stay was because of relief from the automatic stay or dismissal of the bankruptcy case. (See *Larkin v. W.C.A.B.* (2015) 62 Cal.4th 152, 157 ["statutory language typically is the best and most reliable indicator of the Legislature's intended purpose"]; *Klein v. United States of America* (2010) 50 Cal.4th 68, 77 ["'statutory language is generally the most reliable indicator of legislative intent'"].) Because this language is clear and unambiguous, we do not consider the legislative history. (*See DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 992 ["[i]f the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature"];

---

*v. E.T. Legg & Associates* (2001) 89 Cal.App.4th 496, 505.) C. Man makes a similar claim about the foreclosure sale here.

11

*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 61
["[w]here . . . legislative intent is expressed in unambiguous terms, we must treat the statutory language as conclusive; 'no resort to extrinsic aids is necessary or proper'"]; *Koszdin v. State Compensation Ins. Fund* (2010) 186 Cal.App.4th 480, 488 ["'[i]f the statutory language is unambiguous, "we presume the Legislature meant what it said, and the plain meaning of the statute governs"'"].)  Indeed, C. Man does not argue that section 2924g, subdivision (e), is ambiguous and should be limited, as the Legislature may have intended, to orders granting relief from the automatic stay, where federal bankruptcy law already imposes a 10-day waiting period, or to orders where federal bankruptcy law already provides for a waiting period.[5]  Therefore, section 2924g, subdivision (e), applies to the termination of the stay in this case.

C.    *The Trial Court Properly Granted Melon Partners' Motion for Summary Judgment*

Because section 2924g, subdivision (e), applied to the foreclosure sale in this case, section 2924g, subdivision (d), did not preclude the trustee from conducting the foreclosure sale for seven days after November 22, 2013.  Therefore, the sale on November 22, 2013 did not violate section 2924g, subdivision (d).  Because C. Man's action was based exclusively on the claim that the trustee violated section 2924g, subdivision (d), the trial court properly granted Melon Partners' motion for summary judgment on the ground that section 2924g, subdivision (e), applied.

---

[5]    C. Man does not cite to or discuss the legislative history of section 2924g, subdivision (e), at all.  Melon Partners does cite to the legislative history of section 2924g, subdivision (e), but erroneously contends this history supports its position.

12

## DISPOSITION

The judgment is affirmed.  Melon Partners' request for judicial notice is denied as unnecessary.  Melon Partners is to recover its costs on appeal.

SEGAL, J.

We concur:

PERLUSS, P. J.

ZELON, J.